UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,        .
                                 .
          Plaintiff,             .  CR No. 18-0218 (TSC)
                                 .
     v.                          .
                                 .
MARIIA BUTINA,                   .  Washington, D.C.
                                 .  Wednesday, July 25, 2018
          Defendant.             .  10:19 a.m.
. . . . . . . . . . . . . .


TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE TANYA S. CHUTKAN
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:

For the Government:            THOMAS N. SAUNDERS, AUSA
                               ERIK M. KENERSON, AUSA
                               U.S. Attorney's Office
                               National Security Section
                               555 Fourth Street, NW
                               Washington, DC 20530
                               (202) 252-7566

                               WILLIAM MACKIE, ESQ.
                               U.S. Department of Justice
                               National Security Division
                               950 Pennsylvania Avenue, NW
                               RFK Building, Suite 7700
                               Washington, DC 20530

For the Defendant:             ROBERT N. DRISCOLL, ESQ.
                               ALFRED D. CARRY, ESQ.
                               McGlinchey Stafford, PLLC
                               1275 Pennsylvania Avenue, NW
                               Suite 420
                               Washington, DC 20004
                               (202) 802-9999

Court Reporter:                BRYAN A. WAYNE, RPR, CRR
                               U.S. Courthouse, Room 4704-A
                               333 Constitution Avenue, NW
                               Washington, DC 20001
                               (202) 354-3186

```
1                    P R O C E E D I N G S
2           THE DEPUTY CLERK:  Your Honor, we have Criminal
3   Action 18-218, United States of America versus Mariia Butina.
4        I would ask that counsel to please approach the lectern,
5   identify yourself and those at your respective tables, starting
6   with the government.
7           MR. KENERSON:  Good morning, Your Honor.  Erik Kenerson
8   on behalf of the United States.  With me at counsel table are
9   Thomas Saunders from the U.S. Attorney's Office, as well as
10  William Mackie from National Security Division, Department of
11  Justice.
12          THE COURT:  Good morning.
13          MR. DRISCOLL:  Good morning, Your Honor.
14  Robert Driscoll on behalf of Defendant Butina.  With me at
15  counsel table is Alfred Carry and Ms. Butina herself.
16          THE COURT:  Good morning.  Good morning, Ms. Butina.
17      All right.  We are here following a detention hearing
18  before Magistrate Judge Robinson for a status conference.
19      Mr. Kenerson, how do you wish to proceed?  Oh, I'm sorry.
20  Mr. Saunders.
21          MR. SAUNDERS:  Good morning, Your Honor.
22      Thank you very much.
23          THE COURT:  Good morning.
24          MR. SAUNDERS:  We've had some preliminary discussions
25  about discovery.  I think that where we are right now is that
```

1    the government has substantial discovery they are ready to turn

2    over right away.

3         Right now we already have about 4 to 6 terabytes of data,

4    the equivalent of over 1-1/2 million files, that we're ready

5    to turn over just as fast as it can be loaded onto a portable

6    hard drive.  There's another batch of data, approximately 4 to

7    6 terabytes --

8              THE COURT:  Let me stop you.  With regard to that

9    first batch, how long do you think that will take to transfer?

10             MR. SAUNDERS:  Barring the issue of a protective

11   order, which I'll get to in a moment, it shouldn't take more

12   than a couple of days.

13             THE COURT:  All right.  Okay.

14             MR. SAUNDERS:  The second batch of data I think should

15   be ready in -- maybe two weeks?  And again, once it's ready, it

16   shouldn't take more than a couple of days to put it onto a hard

17   drive and provide it to defense counsel.

18             THE COURT:  Okay.

19             MR. SAUNDERS:  So the bottom line is, the government

20   wants to provide this to the defense right away, immediately, so

21   that they can begin to prepare their defense in the courtroom.

22        The problem we're having is agreeing on a protective order,

23   and a protective order, from the government's position, is

24   essential not just for the normal reasons of protecting third

25   parties' PPI, personal identifying information, but also to

1    protect potential ongoing investigations and just given the

2    sensitive nature of this case.

3        And in our discussions, the question that seems to be

4    overlying the conflict between the two parties, to put it

5    frankly, is whether or not the defense counsel wants this

6    information right away so that they can prepare for a defense

7    in this court, or if they want the information so that they can

8    use it on cable news.

9        The reason I put it that way, Your Honor, is that we've

10   proposed a basic protective order that says that the information

11   can be used for their defense in this case.  It gives the

12   defense wide latitude to use it in this case including showing

13   it to the appropriate witnesses, showing it to those witnesses'

14   attorneys.

15       When we have offered that protective order, with the

16   knowledge that it would allow us to give all of the information

17   over immediately, the defense rejected that offer, and the

18   defense's response is, no, we should have free rein to use it

19   however we want.

20       Now, our protective order says that you can use it for this

21   case, but you can't use it for other purposes, including public

22   disclosure, like going on the press.  And the defense says, No,

23   no, no.  We should have free rein.

24       That's an exact quote from defense counsel.

25       Now, our concerns about protecting this information would

1    be --

2              THE COURT:  Other than the personal identifying

3    information, what are your other security concerns?

4              MR. SAUNDERS:  Our concerns are about protecting the

5    integrity of potential ongoing investigations, not just related

6    to this case but potential other cases as well.

7              THE COURT:  All right.

8              MR. SAUNDERS:  Our concerns would exist in any case

9    of this sort, but they're magnified given the actions and the

10   words of defense counsel over the past week.  Defense counsel's

11   gone on cable news, the cable news circuit -- shows like

12   Anderson Cooper, Fox News, CNN -- and repeatedly violated local

13   Rule 57.7(b).  The local rule says that an attorney can't make

14   comments about a pending case for public dissemination about

15   the merits of the case, about the evidence in the case.

16        Defense counsel went on CNN and was interviewed by Anderson

17   Cooper, and Anderson Cooper asked him about a text message.

18   Defense counsel responded, "I think that," that text message,

19   "like most of the government's case, is taken completely out

20   of context."  The government is not going to violate the local

21   rules, so the government can't respond in the press.

22             THE COURT:  And ought not to.

23             MR. SAUNDERS:  And ought not to.  Exactly.  And

24   neither should defense counsel.  And this isn't an isolated

25   incident.  On Fox News, defense counsel stated, quote: "I think

1   that the government is stringing together things out of context,

2   and they really don't, uh -- they haven't pointed to anything

3   she did that would be remotely spy-like."  The same interview,

4   he said, quote: "To me, I think it's an overblown case."

5        He's offering his personal opinion.

6        THE COURT:  Well, there is a line, Mr. Saunders,

7   between mounting a vigorous defense of your client and

8   maintaining your client's innocence publicly, which Mr. Driscoll

9   is certainly permitted to do at this stage, and then violating

10  the local rule.

11       MR. SAUNDERS:  I agree, Your Honor.  But it's not one

12  incident.  It's multiple incidents, and I think it culminates

13  when the defense, in the press, mischaracterizes the case.

14       The defendant is being charged with acting as a foreign

15  agent and conspiring to do the same.  This is not a mere FARA

16  violation, the Foreign Agents Registration Act, yet defense

17  counsel goes on television and says, quote:

18       "It's a young woman who's 29 years old, who just graduated

19  from American with a master's, and she's being held without bond

20  in a D.C. jail for a FARA registration charge."  He continues:

21  "So I think a lot of people look at a young woman like that and

22  think of their own kids."

23       There is a line, and I think the line has been crossed

24  repeatedly here.  And when we have asked defense counsel what

25  use they would put to some of the evidence we're going to

```
1    provide to them, what use they would not be allowed to have
2    under the proposed protective order, the only answer is, we
3    should have free rein.  And that's the basis of our concern,
4    Your Honor, and that's what we are struggling to work out.
5              THE COURT:  Mr. Saunders, have you provided the
6    defense counsel with a proposed protective order?
7              MR. SAUNDERS:  Yes, Your Honor.
8              THE COURT:  Have they provided any proposed edits,
9    or are they just opposed to the use of the order?  And I'll let
10   Mr. Driscoll address this in turn.
11             MR. SAUNDERS:  Yes, Your Honor.  We've provided them
12   not only one; we've provided them two.  The first protective
13   order would allow us to hand over just everything without having
14   to take the time to go document by document.  And, again, the
15   first batch is over 1-1/2 million documents.  So under our
16   initial proposed protective order, we wouldn't have to go
17   through and say what's sensitive and what's not.
18         We would just say, you can look at it all.  And if there's
19   stuff that you feel shouldn't be under the umbrella protection
20   of this order, come to us.  We can talk about it.  But at least,
21   under this initial order, you can begin to look at stuff right
22   away, and if you and I can't agree on a particular document,
23   we can go to the Court.
24         Defense counsel rejected that.  So then we came back with a
25   second proposed protective order that said, okay, we will take
```

1   the time to decide what we believe is sensitive and what is not,

2   and we will begin to produce discovery to you on a rolling basis

3   with the knowledge that that will take more time.

4        Defense counsel rejected that as well.  There hasn't been a

5   reasonable, detailed response from the defense about what would

6   be acceptable other than to say, if it came from our client's

7   computers when you seized them, we should have free rein to use

8   the information however we want.

9             THE COURT:  All right.

10            MR. SAUNDERS:  Thank you, Your Honor.

11            THE COURT:  All right, Mr. Saunders.

12        Mr. Driscoll.

13            MR. DRISCOLL:  Thank you, Your Honor.  Counsel didn't

14   talk much about a protective order.  He talked a lot about the

15   media.  But to get to the protective order --

16            THE COURT:  Why don't we start with your statements

17   regarding your client's case.

18            MR. DRISCOLL:  Okay.

19            THE COURT:  Do you think it is in your client's

20   interest to have a fair trial and an unbiased jury, if it comes

21   to it, when we have -- in the District of Columbia, we can't

22   really move trials.  We have a relatively small and limited jury

23   pool.  Do you think it's in your client's interest to have her

24   case tried in the press?

25            MR. DRISCOLL:  I don't think tried in the press, but

1    I think in this stage, Your Honor, I'm in an unusual situation

2    in that Ms. Butina is the subject of national, incorrect media

3    reporting that I'm trying to push back on, and the ABA Model

4    Rules and the judicial rules allow statements in response to

5    statements made publicly by another party.

6        So, for example, last night CNN reported that my client was

7    trained as a spy in Russia.  The government doesn't even allege

8    that.  That's nowhere in the case, and I had to correct that for

9    them.  Then there are other things like that.

10        Ms. Butina's been subject to scrutiny because of the

11   government, in a bond hearing, proffering a statement about

12   Ms. Butina offering sex for a job, and refusing brought [sic]

13   any evidence related to that.

14           THE COURT:  Well, we're not at trial yet.

15           MR. DRISCOLL:  But I think I've got to zealously

16   represent her and -- I mean, right now the appearances that I've

17   done are an eyedropper in a tsunami of negative press that has

18   already convicted her.

19           THE COURT:  Well, unfortunately, this is the kind of

20   case that has attracted a fair amount of attention and will no

21   doubt continue to.  And as I told Mr. Saunders, you do have an

22   obligation to zealously defense your client, but we have local

23   rules here.  I certainly don't want to have to impose a gag

24   order as other judges have in other cases in this court, but I

25   will entertain a motion or a request to do so if I think that

1    your statements cross the line and violate our local rules.

2    So I'm cautioning you --

3                MR. DRISCOLL:  I'll keep that in mind, Your Honor.

4                THE COURT:  -- at this stage.  With regard to the

5    protective order, have you provided an alternative protective

6    order to the government?

7                MR. DRISCOLL:  Yes, Your Honor.  The government's

8    theory -- just to make clear because I don't think Mr. Saunders

9    did, the government's theory is that the documents and items

10   that were possessed by my client before they were seized by the

11   government somehow become confidential once they're seized by

12   the government.  And when the government gives them back, they

13   can restrict their -- they can protect them under a protective

14   order.  And our view -- we only asked for one edit.

15       The statement that we did not propose any edits is just

16   flatly incorrect.  We sent an e-mail last night and said the

17   second protective order they proposed is fine so long as

18   protecting material excluded material that was in the possession

19   of the defendant prior to being seized.

20               THE COURT:  But, Mr. Driscoll, if material that was

21   seized that was in the possession of the defendant concerns

22   material, for example, on her computer that the government is

23   using in connection with an ongoing investigation, merely

24   because it was in the possession of your client doesn't mean

25   that it doesn't need to be kept confidential because there are

1    ongoing investigations.  The fact that it was in your client's

2    possession doesn't give it some kind of talismanic protection,

3    and so I'm not clearly understanding your position.

4         MR. DRISCOLL:  I mean, it's my position that it's the

5    government's burden to say what needs to be protected and why.

6    For example, my client's diary, my client's notes, all those

7    kind of things are just simply documents of my client.

8        My client's immigration papers, all those things, simply

9    because they came into the possession of the government, she

10   doesn't lose her First Amendment rights or her ability to do

11   with those documents what she wants.

12        THE COURT:  Well, this is a pending criminal case.

13   I'm sort of curious as to what you would be planning to do with

14   her immigration documents or her diary in advance of the trial.

15        MR. DRISCOLL:  Well, I mean, they might be evidence

16   at the trial, but there might be other purposes for which they

17   would be used.  There are ongoing congressional investigations,

18   for example, that we've been dealing with.  A lot of these same

19   documents have already been produced to the Senate Intelligence

20   Committee.

21        THE COURT:  Well, certainly, if those documents are

22   subjects of a subpoena, you can go to the government and say

23   that these documents or these items have been subject to

24   subpoena.  I mean, Mr. Saunders already proposed that if there

25   are particular items that you want, you can come to the

1    government and try and work out an arrangement whereby those

2    documents can be produced.

3         But here's the problem.  There is a huge amount of

4    discovery in this case that I would imagine that you want

5    to get working on because you have a client to defend.

6              MR. DRISCOLL:  Right.

7              THE COURT:  And I would imagine that it would be a

8    priority for you to get started going through that material.

9    If you have me -- and I'm not saying I'm going to do this.

10   But if what you're asking is for me to order the government to

11   go through all the discovery and separate out what they think

12   should be subject to a particular protective order and what they

13   think should not, we're going to be here -- you're going to be

14   coming back here for months, because that's going to take a very

15   long time, and it's going to certainly impact how quickly you

16   can prepare for your client's defense.

17             MR. DRISCOLL:  Okay.

18             THE COURT:  So I really don't understand this

19   distinction that you're drawing between material that was in

20   your client's possession and other material.  There may be

21   material that was in your client's possession that the

22   government needs to further its investigation that shouldn't be

23   public, and simply because it was in her possession doesn't mean

24   that it shouldn't be subject to a protective order.  If you can

25   show me a case or a rule that says different, I'd be interested

1    in seeing it.

2              MR. DRISCOLL:  Your Honor, just for reference,

3    I'll pass that up.

4          (Document tendered to the Court and government counsel.)

5              MR. DRISCOLL:  This is the most recent similar --

6    this is an order from the district court in Alexandria in the

7    Manafort case.  Judge Ellis, in that case, objected to an

8    assented-to order, which was essentially the order the

9    government wants here, which would have covered everything.

10        The court noted that there has to be a specific reason

11   why things need to be covered by a protective order, and so

12   he rejected it.  And I think that's applicable here, the same

13   reasoning.  It's a question of whose burden it is.  I'm

14   certainly willing to -- if it concerns press, that I'm willing

15   to deal with by agreement or by otherwise.

16              THE COURT:  Well, this doesn't -- I don't know what

17   protective order Judge Ellis is talking about.  I don't know

18   what the parties requested.  I don't know what assented

19   protective order is the subject of this court's order.  I think

20   we're talking in the abstract.

21        Perhaps if the parties were to provide me with a proposed

22   order and your objections to it and/or your proposed order, but

23   I can tell you now, Mr. Driscoll, that simply exempting any

24   materials that were in the possession of your client from the

25   terms of the protective order is probably not going to fly.

1          MR. DRISCOLL:  Okay.

2          THE COURT:  If you want to say, you know, personal

3     items, items of clothe -- I mean, if you can give me some --

4     you know, some listing or some reason why certain personal items

5     should not be subject to the order, I'll consider it, but I'm

6     not going to just consider a blanket exemption given the

7     government's proffer.

8          MR. DRISCOLL:  Okay.  I guess, Your Honor, the only

9     thing I'd leave you with on that is that if you read the

10    government's current draft order -- I think this gets to my

11    point about kind of whose burden it is and why these orders

12    can't be overbroad, is that if the order as it exists now is

13    read literally, my client has to destroy all her own documents

14    at the end of the case.  It says everything covered by the

15    protective order is to be destroyed at the end of the case.

16         And so I think, generally, when you see protective

17    orders -- I mean, we're more than willing to have a blanket

18    protective order for anything related to the government.

19    Anything related to government surveillance, anything if they

20    think there's sensitive material, anything from the government,

21    government notes, I totally understand.  If the government wants

22    a restriction that we can't disseminate any of this evidence to

23    the media, that's fine.

24         But just the notion of having a discovery order that just

25    blanket covers everything when prior to the search -- I mean,

most of the evidence in this case, according to the government,
is essentially the evidence from my client's computers.  It's
her evidence.  We're not talking about state secrets here.

So, I mean, that is the -- this isn't an espionage case.
There's no classified information.  There's none of that.
This is a registration case, a foreign agent registration case.
So we'll leave it on that.  We'll see, maybe after the hearing,
if we can work something out with the government.

We had a couple other issues, too, that --

THE COURT:  All right.  But with regard to the
protective order, Mr. Saunders, Mr. Driscoll, what I'd like you
to do is submit to me the proposed order with your objections --
your proposed order, and then, Mr. Driscoll, your objections to
that order, and if you have a counter-order or a suggested
edited version, submit that as well, and then I can decide on it
because there is going to be a protective order in this case, at
least for some material.

MR. SAUNDERS:  Thank you, Your Honor.  Could we have
a week or so to just brief up?

THE COURT:  Yes.

MR. SAUNDERS:  Thank you very much.

THE COURT:  Mr. Driscoll.

MR. DRISCOLL:  Okay.  I guess, just to get on the
record the likely motions we're going to file and maybe talk --
you know, we can talk scheduling with the Court.  We'll likely

1    be filing a motion for bond review or to review the issue of

2    conditions of release probably within a couple of weeks, I think.

3              THE COURT:  All right.

4              MR. DRISCOLL:  And we'd like to be heard on that.

5              THE COURT:  Sure.

6              MR. DRISCOLL:  If we don't get it soon, we'll be

7    filing a motion to compel return of the defendant's computers.

8    And I would just note that on April 24th her apartment was

9    searched by the FBI, and I was present for that search, and we

10   got the computers back the next day.

11        The day of the arrest was a week ago Sunday.  The same

12   computers and phones were taken.  Presumably, there's a limited

13   amount of data from between April and now they need to pick up,

14   and we still haven't seen anything back from the government yet.

15             THE COURT:  When you say you haven't seen anything

16   back from the government, what do you mean?  You haven't gotten

17   the computers back?

18             MR. DRISCOLL:  We haven't gotten the computers back or

19   the phones back or any of those things.

20             THE COURT:  Well, I assume that the government's still

21   processing them, but I'll hear from Mr. Saunders.

22             MR. DRISCOLL:  Right.  My only point was that they

23   processed it in a day, prior.  And then we'll be filing a motion

24   either to dismiss or for a bill of particulars on the indictment,

25   which I think was probably not unexpected.

1    The other one point we wanted to make is we did make a

2    special request with the government to receive, on an expedited

3    basis, any evidence they had to back up their claim that

4    Ms. Butina traded sex for a job.  That has become, unfortunately,

5    a big issue in the media.

6    It was proffered -- you know, as proffered in the bond

7    hearing before, we have no idea what the government's talking

8    about.  We don't believe it's true, and the government has --

9    we presume they could just give that part of it to us so we

10   could see what it is, and the government has not agreed to do

11   that.  They said that we can wait till discovery to do that.

12             THE COURT:  What's your position regarding the Speedy

13   Trial Act?  Mr. Saunders or Mr. Driscoll, is there a motion?

14             MR. SAUNDERS:  Yes, Your Honor.

15             THE COURT:  Well, before we do that, because we'd

16   have to have a date to do that -- are you finished, Mr. Driscoll?

17             MR. DRISCOLL:  I'm done, Your Honor.

18             THE COURT:  Mr. Saunders, what's your position with

19   regard to the information that Mr. Driscoll just requested?

20             MR. SAUNDERS:  The --

21             THE COURT:  Well, let's start with the computers and

22   the phone.

23             MR. SAUNDERS:  They are still being processed,

24   Your Honor, and we're evaluating when it would be appropriate

25   to give it back because even the physical device is itself

1    evidence.

2          THE COURT:  I mean, it's not unusual in cases like

3    this, where there are searches of computers and cell phones

4    and so on, for processing to take a while.  It would be unusual

5    if at this stage of the case these items were returned, in my

6    experience.  I assume you've heard Mr. Driscoll's request, and

7    you'll speak with him about when he can expect to get those

8    items.

9          MR. SAUNDERS:  Yes, Your Honor.  It's on our radar.

10   We're still trying to, one, process, and then decide what sort

11   of additional evidentiary value the physical devices might have.

12         THE COURT:  All right.

13         MR. SAUNDERS:  With regard to other particular pieces

14   of discovery, again, our position is -- well, our position is

15   twofold.  One is we want to make sure the protective order is

16   in place before giving over anything; and second, we're concerned

17   about to what use anything will be put, and if the defense is

18   seeking particular pieces of evidence so that they can take them

19   to the news media, we don't want that violation of the local

20   rules.

21         THE COURT:  Right.  I mean, I think, Mr. Driscoll,

22   you're certainly entitled to discovery.  You're certainly

23   entitled to know the basis of the charges against your client

24   in accordance with our local rules, but I'm not sure you're

25   entitled to specific pieces of evidence to rebut media reports.

1          You know, I'm sure it's not pleasant to read incorrect

2    things about your client.  No lawyer likes that.  But my

3    obligations here are to get this case resolved, whether that be

4    through trial or any other way, in an expeditious and fair

5    manner.  So to the extent that you'll get that information,

6    you'll get it as you would any other information in this trial.

7          And with regard to those proposed motions, does the

8    government have any -- well, once they're filed, we'll have a

9    briefing schedule on those.

10               MR. SAUNDERS:  I'm sorry.  Can you say that again?

11               THE COURT:  With regard to the proposed motions, we'll

12   set a briefing schedule when they're received.  All right.

13         So did you have something else you wanted to bring up?

14               MR. SAUNDERS:  Just to say that we do think that time

15   should be excluded between now and the not-too-distant --

16               THE COURT:  Then that brings me to our next status date.

17         I assume, Mr. Driscoll -- you said you wanted to have a

18   hearing on any bond-review motion.  We can set another status

19   date now.  If you file a bond-review motion and you want a

20   hearing before that date, we'll see what we can do, or we can

21   try and set a status date close to the time, you know, 10 days

22   or whatever that you intend to file your bond-review motion.

23   That way we don't have too many hearings.  But it's however you

24   want to do it.  Do you have a proposed date?

25               MR. SAUNDERS:  A month to 45 days out, Your Honor.

1          THE COURT:  All right.  Mr. Bradley?

2      Oh.  Mr. Saunders, I know I don't have to tell you, but

3  I will anyway.  This Court expects the government to take its

4  obligations under *Brady* very seriously.

5      If there is any information that is exculpatory to the

6  defendant, that material must be provided as quickly as possible,

7  and that obligation is ongoing for the entire time this case is

8  before me.  So I don't want there to be any delay.  If there is

9  any *Brady* material, that *Brady* material needs to be turned over

10 as quickly as possible.

11          MR. SAUNDERS:  Understood, Your Honor.

12          THE COURT:  Mr. Bradley.

13      (Deputy Clerk conferring with the Court.)

14          THE COURT:  All right.  So 30 to 45 days takes us to

15 the end of August, first week in September, which I know is a

16 week that a lot of people are away.

17      Where does 45 days take us, Mr. Bradley?

18          THE DEPUTY CLERK:  That takes us to September 10th.

19          THE COURT:  I can do the 10th.  Is September 10th

20 agreeable?

21          MR. SAUNDERS:  Yes, Your Honor.

22          THE COURT:  Mr. Driscoll?

23          MR. DRISCOLL:  Yes, it is, Your Honor.

24          THE COURT:  All right.  I have several matters that

25 morning, including a sentencing that's going to take a while, at

1   ten o'clock.  We could do this at 9:30.  Is that -- is 9:30

2   workable for you?

3           MR. SAUNDERS:  That's good for government, Your Honor.

4           MR. DRISCOLL:  That's good for me, Your Honor.

5           THE COURT:  9:30, September the 10th.

6       The problem is 9:30 is fine if we're just going to have

7   a status hearing, but if we're going to have a hearing on a

8   bond-review motion, that may not work because I have one, two,

9   three matters, including a sentencing, and then I have a meeting

10  at 12:30.  So let's -- hold on.  We can do it in the afternoon.

11          MR. SAUNDERS:  That's good for the government.

12          THE COURT:  Does that work for you?

13          MR. DRISCOLL:  That works, Your Honor.

14          THE COURT:  All right.  Let's do it at two o'clock on

15  the 10th.  All right?

16      Mr. Driscoll, do you have a position regarding the request

17  on the Speedy Trial Act?

18          MR. DRISCOLL:  The defendant's been advised and at

19  this time would waive time under the Speedy Trial Act.

20          THE COURT:  All right.  Having heard the

21  representations of the government, given the complexity of this

22  case, the voluminous amount of discovery that has yet to be

23  provided, the Court finds it is in the interest of justice to

24  exclude from computation under the Speedy Trial Act the time

25  between today's date and the next status date of September 10th.

1          MR. SAUNDERS:  Thank you, Your Honor.

2          THE COURT:  Okay.  Anything else?

3          MR. DRISCOLL:  Your Honor, if I could?

4          THE COURT:  Yes.

5          MR. DRISCOLL:  Just on the *Brady* issue, I just want

6     to make the Court aware of a -- hopefully, it won't come to

7     briefing, but there's a collateral, difficult constitutional

8     issue of -- the Senate Intel Committee took testimony from

9     Ms. Butina for eight hours.  I've been able to review that

10    transcript and correct it with Ms. Butina, but they won't

11    release a copy because of their institutional interests.

12         The government, for understandable reasons, have been coy

13    about whether or not they have a copy because -- but if they did

14    have a copy, I believe it would be exculpatory, and we'd be

15    entitled to it.  But I think there could be -- hopefully, I'll

16    be able to get a copy from the Senate, but if I don't, I'll want

17    a copy from the government if they have it, and hopefully

18    that'll be resolved without a court intervention.  I wanted to

19    make you aware of it.

20         THE COURT:  Well, thank you.  There's a lot of "ifs"

21    there.  If the testimony -- I guess the question is, under *Brady*,

22    is it in the control or custody of the government?  If they're

23    aware of it and have it and you don't, and if it contains

24    exculpatory information, then certainly you're entitled to it

25    under *Brady*.

```
 1            MR. DRISCOLL:  Senate counsel has represented to
 2   me that they would turn it over to the government upon the
 3   government's request, make it available to the government --
 4            THE COURT:  Right.
 5            MR. DRISCOLL:  -- if they signed off on it.
 6            THE COURT:  I guess the question is, under Brady, is
 7   the government aware -- I mean, have you reviewed the material,
 8   and does it contain exculpatory --
 9            MR. SAUNDERS:  Your Honor, this is a complicated
10   constitutional question --
11            THE COURT:  Great.
12            MR. SAUNDERS:  -- involving the Speech or Debate
13   Clause, and what I can say right now is that it's probably not
14   best to do it on the fly at the end of this hearing, but maybe
15   brief the issue.
16            THE COURT:  I think that would be wise.  Yes.
17   So why don't you, Mr. Saunders -- well, first review the
18   material, determine if -- if you don't have it.
19            MR. SAUNDERS:  It's not currently in our possession.
20            THE COURT:  Okay.  You're all going to have to brief
21   this issue --
22            MR. SAUNDERS:  Thank you, Your Honor.
23            THE COURT:  -- because if it's not in their
24   possession, Mr. Driscoll, then there is a question as to whether
25   it's Brady because the government doesn't have it.
```

1      MR. DRISCOLL:  But I think if the government's

2  reviewed it in a SCIF, I would imagine...

3      THE COURT:  Right.

4      MR. DRISCOLL:  So.

5      THE COURT:  So the question is whether they can review

6  it, then provide the information orally?  Because if they don't

7  have it, they can't turn it over.  If they're aware of it, I

8  certainly suppose they can provide you with the substance of the

9  material orally.

10      MR. DRISCOLL:  Or I could resolve this by getting it

11  from the Senate myself.

12      THE COURT:  Well, I think Mr. Saunders is right.

13  I don't want to make any prospective rulings, and I don't want

14  to make any rulings without further information.  So why don't

15  you continue to look into it.  If you need me to intervene at

16  some point, just file something.

17      MR. SAUNDERS:  Thank you, Your Honor.

18      MR. DRISCOLL:  Thank you, Your Honor.

19      THE COURT:  All right.  Thank you all.  Excuse me.

20      (Deputy Clerk conferring with the Court.)

21      THE COURT:  Right.  With regard to, Mr. Driscoll, your

22  bond-review motion, I can give you a date by which you should

23  file it, or you -- I don't have to do that.  Once you file it,

24  the government will have a certain amount of time to respond.

25      MR. DRISCOLL:  Just in the ordinary course is fine,

Your Honor.

THE COURT:  I'm sorry?

MR. DRISCOLL:  Just in the ordinary course is fine.

THE COURT:  All right.

MR. DRISCOLL:  We'll try to file it as quickly as we can.

THE COURT:  Okay.  With regard to the proposed protective order, you said you want -- how much time did you need, Mr. Saunders?

MR. SAUNDERS:  If we could have two weeks, that would be good.

THE COURT:  So two weeks from today will take us to?

THE DEPUTY CLERK:  That's August 8th.

THE COURT:  All right.  The government will file its proposed protective order on the 8th.

Mr. Driscoll, I'd like you to file any objections or proposed changes to that -- what's a week from the 8th?  A week later is what date?

THE DEPUTY CLERK:  The 15th.

THE COURT:  By the 15th.

MR. SAUNDERS:  One final matter, if I could get clarification.  The ruling on the speedy trial was that the interests of justice outweigh the interests of the public and the defendant in having the time count from now till --

THE COURT:  Well, the defense has assented to the

1    request to waive the time.  So, yes.  I do find that in the

2    interest of justice and given the complexity of the case, the

3    speedy trial computation of time under the Speedy Trial Act will

4    be excluded from today's date to the 10th.

5                MR. SAUNDERS:  Thank you, Your Honor.

6                THE COURT:  All right.  Thank you.

7            (Proceedings adjourned at 10:51 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

* * * * * *

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify
that the foregoing pages are a correct transcript from the
record of proceedings in the above-entitled matter.


*Bryan A. Wayne*
BRYAN A. WAYNE