UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | Criminal Case: 18-218 (TSC) |
| v. | : | |
| | : | |
| | : | |
| **MARIIA BUTINA, also known as** | : | |
| **MARIA BUTINA,** | : | |
| | : | |
| Defendant. | : | |

### Government's Response to the Court's August 24, 2018 Minute Order

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in response to the Court's August 24, 2018 Minute Order directing that the parties may file submissions setting forth reasons why the Court should not enter an order pursuant to Local Rule 57.7(c). Such an order is warranted under these circumstances. Defense counsel has repeatedly made statements and given media interviews in violation of the applicable Local Rules and in disregard of the Court's earlier admonition, including after the Court issued its August 24, 2018 Minute Order. Defense counsel's statements to the media are, at least, substantially likely to interfere with a fair trial and otherwise prejudice the due administration of justice in this case. *See* LCrR 57.7(b)(1).

"[T]he propriety and necessity of preventing interference with the course of justice by premature statement [or] argument . . . hardly can be denied." *Patterson v. Colorado ex rel. Attorney General of Colorado*, 205 U.S. 454, 463 (1907), quoted in *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1070 (1991). As the Supreme Court has opined, "a lawyer actively participating in a trial, particularly an emotionally charged criminal prosecution, is not merely a person and not even merely a lawyer. . . . He is an intimate and trusted and essential part of the machinery of

justice, an 'officer of the court' in the most compelling sense." *Gentile*, 501 U.S. at 1072 (quoting *In re Sawyer*, 360 U.S. 622, 666, 668 (1959)). Moreover, as an officer of the court, an attorney has "a fiduciary responsibility not to engage in public debate that will . . . obstruct the fair administration of justice." *Id.* at 1074 (quoting *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 601 n.27 (1976)). Indeed, media statements from attorneys pose a special risk to the fair administration of justice. *Id.* "Because lawyers have special access to information through discovery and client communications, their extrajudicial statements pose a threat to the fairness of a pending proceeding since lawyers' statements are likely to be received as especially authoritative." *Id.* Ultimately, "[c]ollaboration between counsel and the press as to information affecting the fairness of a criminal trial is not only subject to regulation, but is highly censurable and worthy of disciplinary measures." *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966) (quoted in *KPNX Broad. Co. v. Arizona Superior Court*, 459 U.S. 1302, 1306 (1982)); *Gentile*, 501 U.S. at 1066; *United States v. Noriega*, 917 F.2d 1543, 1546 (11th Cir. 1990); *In re Russell*, 726 F.2d 1007, 1010 (4th Cir. 1984); *Hirschkop v. Snead*, 594 F.2d 356, 364 (4th Cir. 1979); *Farr v. Pitchess*, 522 F.2d 464, 468-69 (9th Cir. 1975).

In the instant case, defense counsel has made multiple statements to the press that are substantially likely to have a materially prejudicial effect on this case. The government alerted the Court to some of those statements at the July 25, 2018 hearing, and those representations are hereby incorporated by reference.[1] Since that hearing, defense counsel has continued speaking to the press, including the following:

---

[1] The government also hereby incorporates by reference the information contained in its August 23, 2018 letter to defense counsel, filed as docket entry number 22 in this case.

- Mr. Driscoll spoke to *Politico* for an article published on July 28, 2018.[2] The article stated, in part:

    > Any assertion that she was meeting with [the head of a Russian government-affiliated cultural center] for nefarious purposes, Driscoll said, was part of a Justice Department effort to taint the 29-year-old gun rights activist through innuendo, false claims — such as that she tried to trade sex for access — and guilt by association, he said.

  Also according to the *Politico* article, Mr. Driscoll identified a person connected to this investigation whose identity had not previously been disclosed. As the article noted, "[Mr.] Driscoll . . . confirmed the Russian official's identity after POLITICO asked him for comment." At times, Mr. Driscoll appeared to speak for the defendant herself — thereby giving the potential jury pool access to information that would be inadmissible at trial unless the defendant took the stand and testified. Specifically, Mr. Driscoll stated, the defendant "is certainly unaware" of whether the head of the Russian government-affiliated cultural center is a "member of Russian intelligence." Then, Mr. Driscoll proffered what appears to be his own opinion and argument about the same evidence, adding that "[a] Russian national having dinner with a Russian national is nothing unique at all."

- Mr. Driscoll made additional press statements that were published on July 30, 2018, by McClatchyDC.[3] The McClatchy article discussed money transactions in connection with the defendant and her alleged associates. The article stated, *inter alia*:

    > Butina's attorney, Robert Driscoll, told McClatchy that about $20,000 passed through one of the South Dakota firms, Bridges LLC, which Butina formed in early 2016, with [a U.S. person] serving as the firm's registered agent. Driscoll said Butina received four $5,000 payments through that firm for consulting work for the

---

[2] "Accused Russian agent met with suspected Kremlin spy," Politico (pub. July 28, 2018), *available at* https://www.politico.com/story/2018/07/28/mariia-butina-russia-kremlin-suspected-spy-746043.

[3] "Feds examining suspicious money movements linked to Russian Maria Butina, associates," McClatchy DC Bureau (pub. July 30, 2018), *available at* https://www.mcclatchydc.com/news/nation-world/national/national-security/article215565240.html.

[a cable television channel], where she assisted in the production of a segment featuring bear hunting in Russia.

- RT — a media outlet "financed from the budget of the Russian Federation"[4] — published an article on August 1, 2018, with additional comments from Mr. Driscoll.[5] The article begins, "The media continues to misrepresent the 'unprecedented' case against Maria Butina, even as the US government backpedals on allegations levelled at the Russian activist, *her attorney told RT in an exclusive interview*" (emphasis added).  The article continues:

   > The charges against Butina set *"a dangerous precedent on a number of fronts,"* Driscoll told RT.  Using ongoing political upheaval over tariffs as an example, Driscoll said that Chinese businessmen attending a conference in the US, and who advocate for a resolution to the brewing trade war between Washington and Beijing, could be *"subject to the same theory that they're agents of a foreign government infiltrating the US."*

   (italics in original).  In the article, Mr. Driscoll is also quoted as claiming the government had "backed off" some of the allegations in the case:

   > *"The government kind of backed off that because I confronted them in court. I sent the government an email at the end of June, telling them she was leaving to move to South Dakota with her boyfriend.  So the government was well-aware she was moving.  She wasn't fleeing anywhere, she certainly wasn't fleeing to Russia,"* Driscoll said.  *"They surveilled her going to UHaul to get boxes – I don't think there's a way to get to Russia by land."*

   (italics in original).  According to the article, Mr. Driscoll added, "Essentially, the government is conceding that even under their own theory, if she had filed a piece of paper with the attorney general's office at the beginning of her trip to America, everything she did was legal."  (The government has made no such concession.)  The article also states,

---

[4]   RT.com, "About Us," *available at* https://www.rt.com/about-us/.

[5]   "'In prison for advocating better US-Russia relation': Butina lawyer on her 'misunderstood' case," RT.com (pub. Aug. 1, 2018), *available at* https://www.rt.com/usa/434871-maria-butina-lawyer-driscoll-interview/.

"[T]he government has yet to provide evidence for their clickbait claims, according to Driscoll." The article ends with two extended quotations from Mr. Driscoll. They are:

> "I think there's an irony to the fact that I think she always thought that if she was going to be in prison, that she would be imprisoned in Russia for advocating gun rights if she went too far with that, and now she's in prison in the US for advocating better US-Russia relations."
>
> . . .
>
> "If this gets back to her parents, I want them to know that she should be in touch soon, and that she's healthy and well under the circumstances, and we're doing our best to visit her every day, and make sure to keep her spirits up."

- Mr. Driscoll also spoke with CNN for an article published on August 2, 2018.[6]

  Specifically, the article states:

  > Her lawyer, Robert Driscoll, told CNN Wednesday that she wouldn't take a deal from prosecutors if it meant admitting she was a spy. "If you're not an agent for a foreign government, you can't lie and say you are in order to get rid of this," Driscoll said.

- On August 3, 2018, RT published another article with more quotes from Mr. Driscoll.[7]

  The article states that "Robert Driscoll told the RT that juicy media tales that Butina had traded sex for influence lack any proof and come off as sexist." Referring to other media coverage, the article continues:

  > *"It makes [her case] more like a spy novel, and frankly easier for the public to digest. So editors and producers like those kinds of allegations,"* Driscoll said. He also refuted claims that Butina was preparing to flee to Russia at the time of her arrest, arguing that the government was forced to back down on the allegation after he offered the court evidence suggesting Butina planned to stay in the US and live there with her boyfriend.

  (italics in original).

---

[6] Alleged Russian agents infiltration of GOP circles anything but subtle," CNN.com (pub. Aug. 2, 2018), *available at* https://www.cnn.com/2018/08/02/politics/maria-butina-republican-circles/index.html.

[7] "Accused 'Russian agent' Butina allowed phone calls, but not dental help, after 19 days' detention," RT.com (pub. Aug. 3, 2018), *available at* https://www.rt.com/usa/434981-butina-visit-russian-embassy/.

- In an August 3, 2018 article in the *Washington Post*, Mr. Driscoll commented about alleged email exchanges between the defendant and a former member of a political campaign.[8] According to the article, Mr. Driscoll stated that the email exchanges "show that Butina was a student eager to network with Americans who shared her interests and no more." Mr. Driscoll continued by saying that a former member of the campaign was "[a] military guy who . . . [if he had] been involved would have been a prime target, if that's what [the defendant] was about. . . . But the evidence is clear that there wasn't any significant contact."

- Mr. Driscoll made even more comments to the media for a *Politico* article published on August 14, 2018.[9] In the article, Mr. Driscoll commented on the relationship between the defendant and a specific Russian official. For example, Mr. Driscoll "scoffed at the notion that [the Russian official] is a master spy." In addition, Mr. Driscoll explained that "in his frequent talks" with the defendant, the defendant portrayed the Russian official as "someone who genuinely has come to love America." Mr. Driscoll added that the defendant's connections to a Russian cultural center were merely social. Mr. Driscoll was also quoted as offering his opinion that "[m]y impression of [the Russian official] from knowing [the defendant] is that she viewed him as a mentor and as someone who was helpful to her, with her gun rights group and personally. . . . He helped raise her profile."

---

[8] "Trump associate socialized with alleged Russian agent Maria Butina in final weeks of 2016 campaign," Washington Post (pub. Aug. 3, 2018), *available at* https://www.washingtonpost.com/politics/trump-associate-socialized-with-alleged-russian-agent-maria-butina-in-final-weeks-of-2016-campaign/2018/08/03/d87c1d84-96a6-11e8-80e1-00e80e1fdf43_story.html?utm_term=.bb28deac58c3.

[9] "Handler of alleged spy Butina tied to suspicious U.S.-Russia exchange program," Josh Meyer, Politico.com (pub. Aug. 14, 2018), *available at* https://www.politico.com/story/ 2018/08/14/russia-americans-putin-torshin-776237.

Mr. Driscoll was quoted as stating that the Russian official was "always eager . . . to meet with Americans."

- On August 18, 2018, RT published a video interview with Mr. Driscoll.[10] During the interview, Mr. Driscoll discussed the defendant's alleged treatment during her incarceration and a crowd-funding campaign for the defendant. The interviewer, referring to the crowd-funding campaign, asked, "Is it only money you're expecting to gain or hopefully a lot *more heads turned towards this case*?" (emphasis added). In response, Driscoll stated that he wanted "both."

- On August 28, 2018, ABC's *Good Morning America* announced a new interview with Mr. Driscoll that occurred after the Court issued its Minute Order.[11] Promoting the recent interview, *Good Morning America* published a brief article and a video clip. In the article, Mr. Driscoll opined on the relationship between the defendant and a named U.S. person. Mr. Driscoll — denying that the defendant engaged in a duplicitous relationship as part of a larger operation to gain political access — was quoted as saying, "I think in some ways it's a classic love story" and that he sees "only a pair of 'ambitious' people who 'hit it off' over their 'similar interests.'"[12] In the video, Mr. Driscoll was shown seated across from the ABC interviewer, answering her questions about the case. The promotional video also contains clips from a music video featuring the defendant and the named U.S. person

---

[10] "Accused 'Russia agent' Butina deprived of sleep & medications – lawyer to RT," RT.com (pub. Aug. 18, 2018 *available at* https://www.rt.com/usa/436290-butina-deprived-sleep-medicine/.

[11] "The romance at the heart of an alleged Russian influence operation," Good Morning America (pub. Aug. 28, 2018), *available at* https://www.goodmorningamerica.com/news/video/romance-heart-alleged-russian-influence-operation-57445985.

[12] "Maria Butina and the romance at the heart of an alleged Russian influence operation," ABC News (pub. Aug. 28, 2018), *available at* https://abcnews.go.com/Politics/lover-cover-romance-heart-alleged-russian-influence-operation/story?id=57437405.

singing to each other.  Responding to the music video, Mr. Driscoll commented that it is "adorable" and that the defendant's relationship with the U.S. person was "pretty legitimate. . . .  I mean, I'm a sucker for, for romance you know, but to me, it looks, they look pretty happy. . . .  The government, essentially, you know, for lack of a better term, called her a whore.  I mean, it's kind of unfortunate, and frankly a little bit sexist that I think because she's a good-looking woman, there's this presumption that any success she has is more has more to do with her looks than her three Masters degrees."  At the end of the video teaser, a *Good Morning America* anchor stated as follows:

> And new this morning, Butina's lawyer Bob Driscoll telling us Maria confirms [the named U.S. person] is indeed in touch with her—even visited her in jail.  This could be the last time we hear from Driscoll, though, for a while.  The government has now . . . asked the Court . . . to issue a gag order.[13]  But Driscoll is telling me . . . he's going to keep talking.

The segment ends with host George Stephanopoulos adding, "Well, he's [referring to Driscoll] earned his pay today," as co-hosts in the studio chuckle.

Local Criminal Rule 57.7(c) permits the Court "[i]n a widely publicized or sensational criminal case" to "issue a special order governing such matters as extrajudicial statements by parties, witnesses and attorneys likely to interfere with the rights of the accused to a fair trial by an impartial jury."  The Supreme Court has made clear that as a prior restraint of speech, such orders against trial participants, including trial attorneys, require a showing of a likelihood of material prejudice to a defendant's fair trial, not merely publicity or sensationalism.  *See Gentile*, 501 U.S. at 1051.  This Circuit has not settled on the precise standard a court must apply in

---

[13] To be clear, the government did not ask for a gag order.  Rather, at the July 25, 2018 hearing, in the context of discussing a proposed protective order, the government highlighted Mr. Driscoll's repeated extrajudicial statements that violated the Local Rules.  After that hearing, Mr. Driscoll continued to make inappropriate and prejudicial statements to the media and, even then, the government did not ask for a gag order.  Nor did the government ask for sanctions of any kind.  Instead, the government merely sent Mr. Driscoll a letter, which "express[ed] our concerns" with his numerous inappropriate statements.  The representation that the government asked for a gag order is false.

determining whether extrajudicial statements are "likely to interfere with the rights of the accused to a fair trial by an impartial jury," so as to warrant a Rule 57.7(c) order. *See In re Halkin*, 598 F.2d 176, 193, n.42 (D.C. Cir. 1979) (recognizing competing standards but opting not to decide), *abrogated in part by Seattle Times v. Rhinehart*, 467 U.S. 20 (1984); *United States v. Morrow*, 2005 LEXIS 8330, at *20-21 (D.D.C. Mar. 21, 2005) (Kollar-Kotelly, J.) (recognizing Circuit split in interpreting similar rules relating to issuance of orders restricting extrajudicial statements). The case law suggests three possible standards, which are, from most- to least-strict: (1) a clear and present danger (or serious and imminent threat),[14] (2) a substantial likelihood of material prejudice,[15] or (3) a reasonable likelihood of material prejudice.[16] The "substantial likelihood" standard is consistent with the guidance provided by the Department to its employees. United States Attorneys' Manual (USAM) § 1-7.600 ("DOJ personnel shall not make any statement or disclose any information that reasonably could have a substantial likelihood of materially prejudicing an adjudicative proceeding.")

Here, under any of these standards, an order governing extrajudicial statements by the parties is warranted. Mr. Driscoll has spoken to the media about this case on numerous occasions,

---

[14] *See, e.g., United States v. Ford*, 830 F.2d 596, 598-599 (6th Cir. 1987) (clear and present danger); *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242, 249 (7th Cir. 1975) ("serious and imminent threat"); *Levine v. U.S. District Court*, 764 F.2d 590, 595-596 (9th Cir. 1985) ("either a clear and present danger or a serious and imminent threat").

[15] *See, e.g., United States v. Scarfo*, 263 F.3d 80, 93-94 (3d Cir. 2001) ("substantial likelihood of material prejudice"); *United States v. Brown*, 218 F.3d 415, 427 (5th Cir. 2000) (same).

[16] *See, e.g., In re Morrissey*, 168 F.3d 134, 139 (4th Cir. 1999) ("reasonable likelihood" of prejudice); *In re Russell*, 726 F.2d 1007, 1010-1011 (4th Cir. 1984) ("reasonable likelihood" of prejudice); *United States v. Tijerina*, 412 F.2d 661, 666 (10th Cir. 1969) (same); *United States v. Stanford*, Case No. H-09-CR-342, Dkt. 307 at 5 (Unpublished, S.D. Tex. Sept. 30, 2010) ("may be reasonably expected or have the potential to interfere with a fair trial or prejudice the defendant").

making public statements that present a clear and present danger of materially prejudicing a fair trial and the administration of justice in this case. He has repeatedly offered his own opinion and out-of-court arguments about the case. He has appeared to express the thoughts of the defendant herself, thereby feeding the potential jury information that would be inadmissible at trial unless and until the defendant testified and was subject to cross-examination. He has publicly identified by name at least one individual who is connected to this case and who could theoretically be called as a witness. He has provided false information including, for example, claiming that the government made a concession that, if the defendant had only "filed a piece of paper," everything she did would have been legal when the government made no such concession. *See, e.g., supra* at 4-5. He has also accused the government of various misconduct, including sexism, making false claims, and using innuendo and guilt by association. He has repeatedly sought to elicit the prejudices and sympathies of potential jurors, casting the defendant as a daughter and sister, and as a mere student or victim. *See, e.g.*, Trans. of July 25, 2018 Hearing at 6:18-6:22 ("a young woman who's 29 years old, who just graduated from American with a master's, and she's being held without bond . . . . I think a lot of people look at a young woman like that and think of their own kids"). Defense counsel made these statements in violation of the Local Rules, including Local Criminal Rule 57.7(b), which provides that a lawyer associated with a case "shall not release" any extrajudicial statement to be disseminated by means of public communication, relating to *inter alia* "the merits of the case or the evidence in the case." LCrR 57.7(b)(3).

Moreover, defense counsel made many of the offending statements after the Court addressed the issue of extrajudicial statements and warned defense counsel to abide by the Local Rules at the status hearing on July 25, 2018. And he reportedly has stated that he plans to continue making such extrajudicial statements despite any orders imposed by this Court. Given the

numerous inappropriate statements that defense counsel has made already over the course of mere weeks, the government submits that an order governing extrajudicial statements by the parties is warranted at this time to deter any future statements that would further jeopardize a fair trial and the fair administration of justice in this case.

                Respectfully submitted,

                JESSIE K. LIU
                UNITED STATES ATTORNEY
                D.C. Bar No. 472845

By:       /s/
                THOMAS N. SAUNDERS
                Assistant United States Attorney
                N.Y. Bar Number 4876975
                United States Attorney's Office
                555 Fourth Street, N.W.
                Washington, D.C.  20530
                Telephone: 202-252-7790
                Email: Thomas.Saunders@usdoj.gov

                /s/
                ERIK M. KENERSON
                Assistant United States Attorney
                Ohio Bar Number 82960
                United States Attorney's Office
                555 Fourth Street, N.W.
                Washington, D.C.  20530
                Telephone: 202-252-7201
                Email: Erik.Kenerson@usdoj.gov

                /s/
                WILLIAM A. MACKIE
                Trial Attorney, National Security Division
                N.C. Bar Number 13816
                U.S. Department of Justice
                600 E Street, N.W., Suite 10810
                Washington, D.C. 20530
                Telephone: 202-233-2122
Dated: August 31, 2018        Email: Will.Mackie@usdoj.gov