**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No.: 1:18-cr-218 (TSC) |
| | ) | |
| MARIIA BUTINA, a/k/a | ) | |
| MARIA BUTINA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT MARIA BUTINA'S OPPOSITION TO**
**THE GOVERNMENT'S REQUEST FOR AN ORDER GOVERNING**
**EXTRAJUDICIAL STATEMENTS UNDER LOCAL CRIMINAL RULE 57.7(c)**
**AND RESPONSE TO THE COURT'S MINUTE ORDER DATED AUGUST 24, 2018**

The government asks this Court to issue a special order under Local Criminal Rule 57.7(c) to restrict extrajudicial commentary in this case because defense counsel's public statements "present a clear and present danger of" prejudicing Maria Butina's right to a fair trial or the administration of justice. (Doc. 24 at 10.) Defendant Maria Butina opposes the entry of such an order as unjust, further stating in response to the Court's Minute Order of August 24, 2018 the following.

According to the news, Maria is a Russian spy with top Kremlin intelligence contacts,[1] a seductress who traded sex as part of a secret influence campaign,[2] and an NRA infiltrator who

---

[1] *See, e.g.,* Ashley May, *Who is Maria Butina? Accused Russian spy allegedly offered sex for power*, USA TODAY (Jul 19, 2018), *available at* https://www.usatoday.com/story/news/nation-now/2018/07/19/maria-butina-accused-russian-spy-who-allegedly-offered-sex-power/799333002.

[2] *See, e.g.,* Tim Dickinson, *An Accused Russian Agent With NRA Ties Is Hit With Salacious New Court Filings*, ROLLING STONE (Jul. 18, 2016), *available at* https://www.rollingstone.com/politics/politics-news/maria-butina-nra-russia-700878/. *See also* Kara Scanell, Sara Murray and Mary Ilyushina, *The Russian accused of using sex, lies and guns to infiltrate US politics*, CNN POLITICS (Jul. 22, 2018), *available at* https://www.cnn.com/2018/07/19/politics/maria-butina-paul-erickson-russian-sex-lies-guns/index.html.

covertly acted to interfere with American politics.[3] None of these reports is true. She is not a spy. She is not working on behalf of the Russian Federation or some Kremlin intelligence operation. She is not a Russian agent.

However, false accounts persist: she tried to flee the country (apparently to the country of *South Dakota*), took down the NRA president (wrong), abandoned a husband and child back in Russia (untrue), is the illegitimate child of Vladimir Putin (false), and has engaged in suspicious financial transactions (which after further review are quite normal). Many, if not virtually all, of the reports on this case have been poor and inaccurate. It is true that the case has garnered significant publicity. However, the government is largely to blame for this fact because of its efforts to "sex-up" its thin case, which makes its request to restrain Maria Butina's right to defend herself, her reputation, and to correct the false public record sowed by the government not only disingenuous but unconstitutional.

Without any evidence, the government deliberately misled the Court and public by accusing Ms. Butina of offering "sex in exchange for a position within a special interest organization." (Doc. 8 at 8.) As shown in her motion and supporting memorandum seeking bond review, this allegation is not true, nor does any reasonable reading of the evidence support it. (Doc. 23 and 23-1.) However, the singular claim created a media frenzy, resulting in nearly the entire institution accepting and repeating the government's depiction of Maria as some type of Red Sparrow or spy-novel honeypot character, trading sex for access and power. A simple Google search using the phrase "Maria Butina and sex" yields over *three hundred thousand* hits, with

---

[3] Matt Apuzzo, Katie Benner and Sharon LaFraniere, *Mariia Butina, Who Sought 'Back Channel' Meeting for Trump and Putin, Is Charged as Russian Agent*, New York Times (Jul 16, 2018), *available at* https://www.nytimes.com/2018/07/16/us/politics/trump-russia-indictment.html.

articles from the BBC, CNN, New York Times, and USA Today all echoing the government's lie in a headline, and *twenty-seven thousand* videos of newscasts espousing the same.

Seemingly not content with dragging a young woman's reputation through the mud, the government's media campaign has continued. After her detention hearing, federal investigators leaked confidential Treasury Department Suspicious Activity Reports (SARS) to the news and suggested that they were incriminating.

> Now *FBI counterintelligence officers* say the duo's banking activity could provide a road map of back channels to powerful American entities such as the National Rifle Association, and information about the Kremlin's attempt to sway the 2016 US presidential election.

BuzzFeed News (emphasis added).[4] "The cash withdrawals are of particular interest to federal agents," the article continues– only federal agents, of course, knowing themselves what may be of interest to them.[5]

The government has also used unnamed government officials to publicly state that this case stems from a counterintelligence investigation, although it has simultaneously declined to share any information to support the existence of such an investigation with the defense in private:

> *Three government officials* told the Times that Ms. Butina's arrest stemmed from a counterintelligence investigation predating the 2016 election that has focused on a Russian government official, Aleksandr P. Torshin, who worked closely with Ms. Butina for years.

New York Times (emphasis added).[6]

---

[4] Jason Leopold and Anthony Cormier, *Here Is The Money Trail From The Russian "Agent" And Her Republican Partner*, BUZZFEED NEWS (Jul. 31, 2018), *available at* https://www.buzzfeednews.com/amphtml/jasonleopold/maria-butina-paul-erickson-suspicious-bank-money-russia.

[5] *Id.*

[6] Matthew Rosenberg, et al., *Beyond the N.R.A.: Maria Butina's Peculiar Bid for Russian Influence*, NEW YORK TIMES (Aug. 4, 2018), *available at* https://www.nytimes.com/2018/08/04/us/politics/maria-butina-nra-russia-influence.html.

We use the mantra 'innocent until proven guilty,' but the words mean nothing when optimistic federal investigators and prosecutors do not act with restraint but instead pursue lousy cases based on novel theories and assert circumstantial, baseless claims that spread widely and prejudice public opinion, which has happened here and, apparently, has happened before.[7] Overzealous federal investigators make honest mistakes, but in their haste to build a case they *want* to be true—a case that ignores the real world and all information that does not fit into their paradigm—those mistakes swell into a tsunami of misleading evidence. The media takes this evidence and creates a story with heroes and villains. The American public consume these stories.

Maria Butina is in a cell, pretrial, 22 hours a day for crimes she did not commit and for government falsehoods and never-tested theories of culpability that have not (and will never) pan out. For all of the government insinuation and media coverage of Hollywood style, spy-novel allegations, in reality this case is bereft of any tradecraft or covert activity whatsoever. There are no dead drops, no brush passes, no secret communication devices, no bags of cash or payoffs, no bribes, no confidential secret information gathering, no espionage type activity, and no agency or agreement to commit crime. Rather this case turns on whether the government can prove (either legally or factually) its novel, circumstantial theory that a smattering (out of thousands) of unsecured Twitter Direct Messages between two friends about personal details and publicly available information establish that Maria Butina was acting under the direction or control of Aleksandr Torshin, whom the government must establish was acting on behalf of the Russian

---

[7] The department chief of this very National Security Section of the United States Attorney's Office for the District of Columbia has been judicially accused of similar "unbelievably inexcusable behavior." In 2012, in another highly publicized criminal matter, Senior Judge Ellen Huvelle reprimanded the government, calling its prosecution "an outrage" and a "case that you cannot win." "The criminal law does not exist to go push something to the outer limits." Martha Neil, *Federal Judge Blasts US Prosecutors for 'Unbelievably Inexcusable Behavior' in Somali Piracy Case*, ABA JOURNAL (Jul. 23, 2012), *available at* http://www.abajournal.com/news/article/federal_judge_blasts_prosecution_in_somali_piracy_case_for_u nbelievably_ine.

Federation rather than in a personal capacity. They cannot. There is no elaborate conspiracy to undermine American politics. Just an idealistic millennial with an innocent personal interest in American politics, genuinely hoping for peace between her homeland and the United States and a future career in international relations.

However, having successfully created a false media narrative that this case is more about Maria Butina seducing NRA members and Republicans than its gossamer-thin evidence that Maria was acting on anyone's behalf other than her own, the government now seeks to prevent her and her counsel from even attempting to correct the public record. Indeed, the government asks this Court to gag "Counsel and all parties in this case" (Doc. 24-1 (emphasis added)) to put a chill on Maria's right to mount a competent and vigorous defense. Fortunately, the fundamental right of freedom of speech is not abrogated when an individual is charged with a crime.

Guided by the Supreme Court's decision in *Gentile*, "an attorney may take reasonable steps to defend a client's reputation . . . including an attempt to demonstrate in the court of public opinion that the client does not deserve to be tried." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1043 (1991).[8] If an attorney can do so, clearly the defendant can as well. After all, the converse would lead to the constitutionally untenable conclusion that a defendant could not openly maintain her innocence because such a public statement, under the government's view, might "present a clear and present danger of materially prejudicing a fair trial and the administration of justice in this case." (Doc. 24 at 10.) According to the government, she must instead remain silent while her

---

[8] In *Gentile*, a Nevada attorney held a press conference the day after his client was indicted. At the press conference, the lawyer contended that the evidence demonstrated his client's innocence, that the likely culprit of the crime was a police detective, and that other victims were not credible witnesses. *See Gentile*, 501 U.S. at 1059-1060. Six months later, after his client was acquitted, the Nevada State Bar disciplined the attorney for violating a rule that prohibited him from making extrajudicial statements that he knew would have a substantial likelihood of materially prejudicing the proceeding. *Id.* at 1033. The Nevada Supreme Court upheld the disciplinary board's finding. The Supreme Court of the United States reversed. *Id.* at 1033, 1058.

reputation is battered and potential jurors in this judicial district might be tainted. There is no plausible reading of *Gentile* or Local Rule 57.7 that supports this conclusion.

The Supreme Court has made clear that a prior restraint on speech—presumptively unconstitutional under *Nebraska Press Association v. Stuart*, 427 U.S. 539, 562-69 (1976)—requires a showing of a likelihood of material prejudice to a defendant's fair trial, not merely publicity or sensationalism. *See Gentile*, 501 U.S. at 1051. This Circuit has not settled on the specific standard a district court judge must apply in determining what kind and whether extrajudicial statements are "likely to interfere with the rights of the accused to a fair trial by an impartial jury" to warrant a Rule 57.7(c) order.[9] The circuits have split between requiring a "substantial likelihood" of material prejudice to the trial, a "reasonable likelihood" of such prejudice, and applying an "imminent danger" or "clear and present danger" standard. *See United States v.* Brown, 218 F.3d 415, 427 (5th Cir. 2000) (examining the different circuit standards for gag orders). However, one thing is clear: the condition precedent for a Rule 57.7(c) order requires a finding that publicity would *actually* prejudice the trial.

Undeniably, the Local Rules authorize the Court to enter an order restricting extrajudicial statements of counsel in an unusually high-publicity case. However, the Local Rules themselves state that extrajudicial statements are improper only "if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice." Local Rule 57.7. Thus, statements must be analyzed in the context of the media environment in which they occur. Were statements of counsel the only statements in the public sphere, there might be some risk of prejudice. However, as demonstrated above, this case has

---

[9] *See In re Halkin*, 598 F.2d 176, 193, n.42 (D.C. Cir. 1979) (recognizing competing standards but opting not to decide), *abrogated in part by Seattle Times v. Rhinehart*, 467 U.S. 20 (1984); *United States v. Morrow*, 2005 LEXIS 8330, at *20-21 (D.D.C. Mar. 21, 2005) (Kollar-Kotelly, J.) (recognizing Circuit split in interpreting similar rules relating to issuance of orders restricting extrajudicial statements).

received saturation coverage having nothing to do with statements of counsel—almost all of such coverage being negative and fueled by the government's unsubstantiated allegations.

The government claims to be worried about prejudice, but the very idea that Ms. Butina, an alleged Russian agent, will benefit from a jury pool biased *in her favor* if counsel is permitted to occasionally push back against the overwhelming onslaught of negative stories that have primed distrust toward anything Russian is simply not credible.

It follows that comment 1 to Rule 3.6 of the DC Bar Rules of Professional Conduct recognizes that counsel has a right to present their client's side of a dispute to the public, but that this right must be balanced against the fair administration of justice, observing further that it is usually the lawyer who can best balance these interests:

> It is difficult to strike a proper balance between protecting the right to a fair trial and safeguarding the right of free expression, which are both guaranteed by the Constitution. On one hand, publicity should not be allowed to influence the fair administration of justice. On the other hand, litigants have a right to present their side of a dispute to the public, and the public has an interest in receiving information about matters that are in litigation. Often a lawyer involved in the litigation is in the best position to assist in furthering these legitimate objectives. No body of rules can simultaneously satisfy all interests of fair trial and all those of free expression

DC Rule Prof'l Conduct R. 3.6, cmt. 1.

The ABA Model Rules go further and explicitly recognize that:

> [A] lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client.

ABA Model Rule 3.6(c). Certainly, that concept is at play here, where a tsunami of coverage, much of it false, has followed this case.

Finally, the defense recognizes that, at some point closer to trial, perhaps 30 days prior a trial date, an order limiting extrajudicial comments might well be appropriate to avoid tainting a jury pool. However, a blanket gag order issued at this point in the proceedings would be tantamount

to allowing the government to "freeze" the false narrative that it helped create, which would unduly prejudice Ms. Butina. After all, the core purpose of restrictions on extrajudicial statements is to preserve *her* Sixth Amendment right to a fair trial. Coupled with her very necessary First Amendment right to declare her innocence, this Court should decline entering an order under Local Rule 57.7(c) today, or, alternatively, enter such an order to be effective 30 days prior to the trial date.

For the foregoing reasons and those that the defense may present during a hearing on this matter, Defendant Maria Butina requests that this Court decline the government's request to enter an order under Local Rule 57.7(c).

Dated: September 7, 2018                    Respectfully submitted,


                                            /s/Robert N. Driscoll
                                            Robert N. Driscoll (DC Bar No. 486451)
                                            McGlinchey Stafford PLLC
                                            1275 Pennsylvania Avenue NW, Suite 420
                                            Washington, DC 20004
                                            Phone: (202) 802-9999
                                            Fax: (202) 403-3870
                                            rdriscoll@mcglinchey.com


                                            /s/Alfred D. Carry
                                            Alfred D. Carry (DC Bar No. 1011877)
                                            McGlinchey Stafford PLLC
                                            1275 Pennsylvania Avenue NW, Suite 420
                                            Washington, DC 20004
                                            Phone: (202) 802-9999
                                            Fax: (202) 330-5897
                                            acarry@mcglinchey.com

                                            *Counsel for Defendant*