```
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA


   UNITED STATES OF AMERICA,      .
                                  .
              Plaintiff,          .  CR No. 18-0218 (TSC)
                                  .
        v.                        .
                                  .
   MARIIA BUTINA,                 .  Washington, D.C.
                                  .  Monday, September 10, 2018
              Defendant.          .  2:06 p.m.
   . . . . . . . . . . . . . . .  .
```

```
                 TRANSCRIPT OF STATUS CONFERENCE
           BEFORE THE HONORABLE TANYA S. CHUTKAN
                 UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

For the Government:            ERIK M. KENERSON, AUSA
                               THOMAS N. SAUNDERS, AUSA
                               U.S. Attorney's Office
                               National Security Section
                               555 Fourth Street, NW
                               Washington, DC 20530
                               (202) 252-7566

                               WILLIAM MACKIE, ESQ.
                               U.S. Department of Justice
                               National Security Division
                               950 Pennsylvania Avenue, NW
                               RFK Building, Suite 7700
                               Washington, DC 20530

For the Defendant:             ROBERT N. DRISCOLL, ESQ.
                               ALFRED D. CARRY, ESQ.
                               McGlinchey Stafford, PLLC
                               1275 Pennsylvania Avenue, NW
                               Suite 420
                               Washington, DC 20004
                               (202) 802-9999

Court Reporter:                BRYAN A. WAYNE, RPR, CRR
                               U.S. Courthouse, Room 4704-A
                               333 Constitution Avenue, NW
                               Washington, DC 20001
                               (202) 354-3186

PROCEEDINGS

1

2      THE DEPUTY CLERK:  Your Honor, we have Criminal

3   Action 18-218, United States of America versus Mariia Butina.

4   I would ask that counsel please approach the lectern and

5   identify yourselves for the record, starting with the government.

6   Thank you.

7      MR. KENERSON:  Good afternoon, Your Honor.  Erik

8   Kenerson on behalf of the United States.  With me at counsel

9   table are Tom Saunders, also from the U.S. Attorney's Office,

10  and William Mackie from the National Security Division of the

11  Department of Justice.

12      While I'm up here, I would like to ask, if it pleases the

13  Court in terms of addressing the Court today, Mr. Saunders would

14  address the 57.7 local rule issue, and I would address the

15  others.

16      THE COURT:  That's fine.  Thank you.  Good afternoon.

17      MR. DRISCOLL:  Good afternoon, Your Honor.

18  Bob Driscoll on behalf of Ms. Butina.  With me at counsel table

19  is Alfred Carry.  We're both with the firm McGlinchey Stafford.

20      THE COURT:  Good afternoon.

21      Good afternoon, Ms. Butina.

22      All right.  We're here for a status hearing, as well as

23  on defendant's motion for review of the bond conditions and

24  on my order to show cause as to why I should not enter what's

25  colloquially known as a gag order in this case due to the

potential for pretrial publicity and the government's assertions regarding statements made by defense counsel that could affect the trial in this case.  So let me first deal first with the bond-review motion.

At the detention hearing on July 18, Magistrate Judge Robinson denied defendant's motion for release from custody based on her conclusion that the government had shown by a preponderance of the evidence that no condition of release or combination of conditions would reasonably assure Ms. Butina's appearance in court.

She subsequently issued an opinion explaining her reasons based on the considerations required by 18 U.S.C. § 3142(f)(2)(A), the nature and circumstances of the offense, the weight of the evidence, the defendant's history and characteristics, and the nature and seriousness of the danger to any person or the community that would be posed by release.

Judge Robinson made the following findings:

1) regarding the nature and circumstances of the offense, that Ms. Butina had been indicted for her alleged involvement in an influence operation inside the United States; that is, conspiracy to act as an agent of a foreign government and acting within the United States as an agent of the same, and that such offenses carry serious penalties and are not properly characterized as mere regulator violations;

2) regarding the weight of the evidence, that the

government proffered that it had amassed significant evidence from surveillance, witnesses, and electronic communications, and that while inferences to be taken from that evidence could be debatable, competing inferences did not undermine its weight;

3) regarding Ms. Butina's history and characteristics, that she was a foreign national with no meaningful ties to the USA and a citizen of a country that does not have an extradition treaty with the USA;

4) regarding the nature and seriousness of the danger to any person or the community, that Ms. Butina could cause harm by resuming the unlawful activities alleged in the indictment.

Primary among Judge Magistrate's factors in deciding to hold Ms. Butina without bond was the risk of flight, and that is this Court's primary concern in considering the bond-review motion.

Ms. Butina now challenges these findings, claiming that she is effectively charged with a regulatory violation stemming from her failure to notify the attorney general of her alleged conduct and that there's no evidence of any covert activity; also, that the government has omitted facts and alternative explanations for her actions and statements in this case while building its case against her, that Ms. Butina's character has been unfairly smeared by the government, and that Ms. Butina is not a flight risk because she has had multiple opportunities to flee during the course of the investigation against her and

prior to the institution of these proceedings and chose not to take advantage of them.

Defense counsel suggests that either release on general supervision by Pretrial Services or on the High Intensity Supervision Program would be appropriate.

The government responds with an additional proffer of evidence and argument against Ms. Butina.  Broadly outlined, the government's position is that she is charged with operating as a Russian agent at the direction of a Russian official while presenting the image of a private individual living as a foreign student, and her connection with the Russian government is further supported by the actions of Russian officials in speaking out on her behalf.

In addition, the government says that it possesses electronic communications in which Ms. Butina seeks direction from a Russian official, along with reports and proposals that she authored relating to activities undertaken with a view to opening an informal communications channel with the Russian Federation and/or describing contacts with political candidates and various possibilities for leveraging those contacts for the benefit of the Russian Federation.

And finally, the government argues that Ms. Butina is a flight risk due to her demonstrable connections to Russian officials, as evidenced by photographs, journal entries and calendar entries; that she's a Russian national; and Russia, as

Judge Robinson noted, lacks an extradition treaty with the
United States; the fact that she now faces criminal charges,
whereas previous cooperation occurred prior to the institution
of these proceedings.

I want to say at the outset that my chambers received
contact from defense counsel this morning that they had videos
that they wanted the Court to see prior to the hearing this
morning.

And, Mr. Driscoll, I can tell you that that is not how
I proceed.  I don't want to be getting material -- there was a
deadline in this case that in fact was very generous, and in the
future, I will not be having a deadline of the night before a
hearing for submissions.  But there was a deadline in this case.

I had a full calendar this morning.  I do not like, and
I will not in the future accept, submissions hours before a
hearing where there's a pending motion.  It's unfair to me; it's
unfair to the government that did not have a chance -- that was
basically sandbagged with this information hours before a
hearing, and they haven't had a chance to respond to it.

So I did have a chance -- I had a meeting.  I had to leave
early after a very full calendar this morning to look at those
three videotapes.  I can tell you, having viewed them, I'm not
sure what on earth their relevance is to Ms. Butina's risk of
flight, but I have reviewed them.

Let me ask you, is it Mr. Saunders that's going to deal

1   with the -- I'm sorry.  Mr. Kenerson.  Mr. Kenerson, have

2   you had a chance to review the videos?

3           MR. KENERSON:  I have, Your Honor.

4           THE COURT:  I'll allow you to respond to them

5   orally to the extent you think a response is necessary.

6           MR. KENERSON:  To the extent that the Court takes

7   argument from the parties on the motions as a whole, if the

8   government believes they require response, we'll weave that

9   response into our argument, but nothing further right now.

10          THE COURT:  For the record, the first -- one of the

11  videotapes is a video of Ms. Butina and her boyfriend

12  lip-syncing, I believe, in what appears to be a recording

13  studio, to the theme song from *Beauty and the Beast*.

14      The second video appears to be a video birthday greeting to

15  Ms. Butina's boyfriend from Ms. Butina's mother, I believe, and

16  the next is a similar birthday greeting -- both greetings were

17  made in 2017 -- a similar birthday greeting to Mr. Erickson from

18  Ms. Butina's father.

19      Is that correct, Mr. Driscoll?  Is my description of them

20  correct?

21          MR. DRISCOLL:  Your description is correct, Your Honor.

22          THE COURT:  And as I would interpret it, are those

23  videotapes -- were those videos submitted in an effort to show

24  that Ms. Butina's relationship with Mr. Erickson was a genuine

25  one and therefore she would not flee?  I'm not sure what the

1    purpose is.

2          MR. DRISCOLL:  Your Honor, if I might, we submitted --

3    and I apologize for submitting this morning -- where there are

4    videos rather than pictures, we couldn't do them as attachments,

5    and we were figuring how to do that.  Essentially, we only

6    submitted those because in some ways the government has become

7    the relationship arbiter by arguing that Ms. Butina's

8    relationship with Mr. Erickson is illegitimate because of

9    certain e-mails and other things they found.

10          So we just felt the need to put that in, not that they

11   would be completely dispositive.  And I hear you with respect to

12   the timing of it, and that will not happen again.

13          THE COURT:  Well, the Court does not find those videos

14   to be at all relevant on the issue of Ms. Butina's risk of

15   flight, and that is the Court's primary concern with regard to

16   her bond status.  But I've reviewed them, for the record.

17          I've reviewed Judge Robinson's opinion in this case, and

18   I agree with her in that while the crime in this case to which

19   Ms. Butina's charged is not necessarily one for which one

20   receives a sort of automatic hold without bond, detention

21   without bond, the Court's primary concern is the risk of flight.

22          And as was previously described at the detention hearing,

23   I cannot envision a scenario where it is not possible, to pardon

24   my double negative, for Ms. Butina to be released from the jail,

25   to be put into a car with diplomatic tags, and to be placed on

an airplane taking her out of the jurisdiction of this court.
High intensity supervision won't stop that, or any other
combination or series of conditions that I impose.  There's a
very real risk of flight.  And the fact that her home country
has no extradition treaty, and the government of that country
has made repeated and vocal demands for her release, does not
reassure this Court that if she's released she will remain
within the jurisdiction of this Court.

So even though the defense counsel has made a very
well-reasoned argument, the arguments that defense counsel have
made are based on an attempt to downplay the seriousness of the
allegations in this case and also a series of arguments
regarding alternative explanations for, or inferences to be
drawn from, the evidence proffered by the government or
allegations that the government has smeared Ms. Butina's
character, none of those arguments are persuasive to this Court
with regard to the risk of flight.

As I've said before, the government's charges here are not
merely regulatory.  The evidence provided in support of their
case relates to a range of activities beyond simply failing to
notify the attorney general of her activities; and as Judge
Robinson concluded, the charges in this case, in light of the
government's evidentiary proffer and the penalties at issue, are
not appropriately characterized as the product of a single
regulatory violation.

1    Even though there may be competing inferences that may be

2    drawn from the body of evidence proffered by the government,

3    that doesn't diminish the significance of the evidence presented

4    at this stage.  And again, the Court's decision is not based

5    primarily on the strength of the evidence, which clearly is a

6    factor and Ms. Butina has been indicted, but it is based on a

7    risk of flight.

8        The Court finds that there are no conditions or

9    combinations of conditions that I can impose that would ensure

10   Ms. Butina's continued availability to the jurisdiction of this

11   Court.  So the motion to alter her bond conditions will be

12   denied.  Ms. Butina will remain in custody pending trial in this

13   matter.

14       I want to turn now to the alleged violations of rule 57.7(b).

15       MR. DRISCOLL:  Your Honor, may I be heard on that?

16       THE COURT:  On my ruling?

17       MR. DRISCOLL:  Yes, just to make the record.

18       THE COURT:  Go ahead.

19       MR. DRISCOLL:  Your Honor, just briefly for the

20   record, I understand the ruling and it's not going to change.

21   I wanted to point out that Ms. Butina specifically had the

22   opportunity to flee on numerous occasions and did not.

23   Particularly, in February of 2017, an article was published that

24   identified her as a potential Russian agent, identified her

25   supposed handler according to the government, and identified her

1    purpose in being in the United States.  Yet, she did not flee.

2         She did not flee after being contacted by several committees.

3    In fact, she testified before the Senate Intelligence Committee.

4    She did not flee after her apartment was searched by the

5    government, the basis of the search being a 951 charge and a

6    FARA charge and a conspiracy charge.  Did not contact the

7    embassy.  Did not make any efforts to flee.  And during the

8    summer after the search, while I was in the process of

9    negotiating with the FBI to give a proffer session in South

10   Dakota related to another matter, again, conduct inconsistent.

11        And while I understand the Court's reasoning, I just want

12   to put in the record that with respect to Ms. Butina in

13   particular as opposed to Russians in general or anyone from a

14   country that has no extradition treaty, Ms. Butina has a history

15   which would indicate a lack of a risk of flight.  I thank you

16   for allowing me to make that record.  Thank you very much.

17          THE COURT:  Your comments are noted for the record.

18   I point out that, although Ms. Butina's actions in not fleeing

19   at the time she realized she was under investigation are one

20   thing.  But the fact is, she has now been indicted, she faces

21   significant criminal penalties, and the Court has to take that

22   into consideration.  So my ruling stands.

23        All right.  With regard to imposition of an order under

24   rule 57.7(b), I have to say, Mr. Saunders and Mr. Kenerson, I

25   think it helpful to begin as you would wish to proceed, and you

1    began this case with rather salacious allegations against

2    Ms. Butina, who's a young woman with no criminal record.  And

3    Mr. Driscoll is right.  Those allegations are notorious and have

4    received a lot of attention and have damaged her reputation, and

5    I'm sure her family and she are all very upset by them.  And I

6    will give you credit for walking them back, as I found out

7    yesterday in perusing my Sunday paper, that you have taken those

8    allegations back.

9        I have to say that in reviewing the substance of the

10    e-mails in the pleadings before me, it took approximately five

11    minutes for me to review those e-mails and tell that they were

12    jokes.  It wasn't even -- it was apparent on their face.  And so

13    I'm concerned that somebody in your office or over at the

14    Department of Justice could look at those e-mails and conclude

15    that they were a serious offer to trade sexual favors for other

16    services.  I'm dismayed by that.

17        Once allegations are made, as Mr. Driscoll properly points

18    out, it's very difficult to take back.  And I credit you for

19    publicly taking back those allegations, but I caution you not to

20    make those -- especially start out a case with those kinds of

21    salacious claims.

22        It really makes it very, very difficult to have a fair

23    trial when those sorts of statements are made, and it's one of

24    the problems in this case in trying to get a jury pool that's

25    not tainted.  So I appreciate your publicly retracting those

comments, and I caution both sides from spending any more time on them.

On the other hand, Mr. Driscoll, you spent a significant amount of time making public statements about this case, including giving your opinion as to Ms. Butina's innocence or guilt, giving your own alternative explanations for the evidence in this case.  And I don't anticipate that you're going to be a witness in this case, so I don't think those kinds of statements are proper.

Local rule 57.7(b)(3) specifically prohibits dissemination of, and I quote, "Any opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case."  Local rule 57.7(b) also prohibits a lawyer from disseminating information or opinion in connection with criminal litigation "if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice."

I find in this case that you have overstepped local rule 57.  I understand your position that the government has made a lot of claims that you believe to be unfounded against your client including the aforementioned claim regarding sexual favors, which it has now publicly retracted.

However, I do find that your comments have crossed the line.  This is a case that's going to be tried here in the District of Columbia.  "When" is a matter we'll turn to in a

1    moment.  But our jury pool is relatively small.  Having a gag

2    order 30 days before a trial won't help us get an impartial jury

3    if you've gone all over the media making statements, giving

4    explanations for the evidence in this case.

5        So I'll tell you, the government contends that you violated

6    57.7(b) by naming a potential witness, discussing financial

7    transactions involving the defendant, discussing the subject

8    of governmental surveillance, that you've made claims regarding

9    the government's alleged failure to produce evidence, claims

10   regarding evidence of Ms. Butina's contact with political

11   campaigns, and characterization of her relationship with a

12   Russian official, among multiple other examples.  And I have to

13   agree.  I understand you feel you have to zealously defend your

14   client, and I certainly understand that.  I've been in your

15   position before.

16       There comes a point at which your work defending your

17   client needs to happen in this courtroom and not on the public

18   airwaves.  I will also point out, Mr. Driscoll, that your public

19   pleadings in this case seem to be directed not just to this

20   Court by their very inflammatory language.

21       Those pleadings are public.  They're available to whoever

22   wants them, and you can certainly make the arguments, whatever

23   arguments you want to make in those, and you certainly have.  I

24   will note that the language is quite descriptive.  You use words

25   like "stunning disinterest," "craven willingness," "nothing

short of cowardice," "desperate attempts," "frankly shocking."
I'm not sure if that language is designed to affect my
decisions, but it's certainly quite colorful.

So, from here on out, I am going to impose a gag order in
this case.  I'll issue a written order shortly, but from now on,
any statements that need to be made about this case need to be
made in this courtroom.  I do find that you have engaged in
conduct that would present a reasonable likelihood, substantial
likelihood, or clear and present danger of interfering with a
fair trial or administration of justice.

Moreover, as I said, while the government shares some of
the blame in this case in terms of the statements it made
starting out, despite those erroneous statements, the defense is
not excused from his own obligation to avoid detailed commentary
on the evidence or merits of the ongoing proceedings.

While I understand that some of the initial publicity of
the case resulted from the political environment and the nature
of the government's allegations, a good deal of the continuing
publicity relates to defendant's counsel's constant media
engagement on specific issues and evidentiary materials that
will no doubt be heavily contested at trial.

In offering competing explanations for and inferences to
be drawn from the evidence in this case, counsel for the defense
is effectively trying the case in the media, making the task of
securing a group of impartial jurors more difficult.

1          And I do note for the record that counsel for the defendant

2    has been doing so in express defiance of my earlier warning that

3    continued public statements might result in the Court's

4    imposition of a gag order, and that is what I'm going to do here.

5          So, accordingly, to protect the rights of the accused to a

6    fair trial by an impartial jury, the Court will issue a special

7    order under local rule 57.7(c), restricting the ability of the

8    parties to release information or make statements regarding the

9    merits of and/or evidence at issue in this case, as more

10   specifically described in local rule 57.7(b)(3).

11         Mr. Saunders or Mr. Kenerson, can you tell me what the

12   status is of this case?

13         MR. KENERSON:   Thank you, Your Honor.

14         So, since the last hearing, we have provided, I think as we

15   alluded to the Court at the last hearing, a number of terabytes

16   of discovery electronically to defense in this case.  That

17   discovery stems from items recovered from the defendant's

18   residence in the April 2018 search warrant.  We've also provided

19   a total of almost 7,000 pages of Bates-stamped document type

20   discovery.  Most but not all of that came also from that same

21   search warrant.

22         We just received last week another hard drive from the

23   defense which we will, just as soon as we can download it,

24   download another approximately 2 terabytes of discovery from an

25   additional search warrant onto and provide to defense, and I

1    think discovery will continue to be provided on a rolling basis

2    if more discoverable materials are generated.

3            THE COURT:  When will you know that?

4            MR. KENERSON:  If there is new information discovered.

5    For example, if there are additional witness interviews that

6    generate discoverable information, we'll provide it on a rolling

7    basis.  We do not expect at this point there to be significantly

8    more discovery along the lines of terabytes.

9            THE COURT:  All right.  Given that, do you have any

10   idea when discovery will be complete?

11           MR. KENERSON:  It will be the majority, largely

12   complete when we get this 2 terabyte hard drive downloaded.

13   And just to give the Court some background as to why it was not

14   provided before today, there was -- the defense chose to have

15   just the April materials provided to them on the initial hard

16   drive they gave to us.  That got them the materials

17   approximately a week sooner than it would have otherwise.

18       We said, do you want it all a week later, or do you want

19   just the April stuff sooner?  They chose just the April stuff.

20   So we got this second hard drive just last week, and we will

21   download it as quickly as the FBI is able to download on it.

22       It, unfortunately, takes longer to do so than I think any

23   of us would like.  I'm not technical, so I don't actually know

24   the reasons; I just know it took a very long time to actually

25   download discovery the last time around.  And I think the

1    defense also had issues getting it onto their system once we

2    gave them the hard drive as well.

3        I know defense is considering filing motions.  I don't know

4    from their perspective if those motions would be dispositive or

5    if they'll be asking for a trial date today, but from the

6    government's perspective, I think given the amount of

7    information that's in the Russian language that the defense

8    likely would like to have translated, it would make sense to set

9    a status and possibly a motions schedule, if that makes sense

10   from what the defense is planning, and come back in about 60

11   days.  We would ask to toll the time under the Speedy Trial Act

12   given the complex nature of this case as well.

13            THE COURT:  All right.  Mr. Driscoll?

14            MR. DRISCOLL:  Your Honor, if I might, I might have

15   Mr. Carry handle the scheduling matters.  He's been handling the

16   nuts and bolts on the discovery.

17            THE COURT:  All right.  Mr. Carry.  Well, while you're

18   up here, Mr. Driscoll, do you have any objection to the request

19   for exclusion under the Speedy Trial Act?

20            MR. DRISCOLL:  We do not, Your Honor.

21            THE COURT:  All right.

22            MR. CARRY:  Good afternoon, Judge.

23            THE COURT:  Good afternoon.

24            MR. CARRY:  For the record, Alfred Carry on behalf of

25   Ms. Butina.  We -- that's correct.  We are still waiting on a

second batch of discovery that I understand is a volume of about 2 terabytes.  That will take some time for us to process and of course review.

Setting a date for a future status date in 60 days makes sense.  We are, as my co-counsel indicated, willing to not let the time between today and that 60-day date not count toward the Speedy Trial Act computation.

With regard to motions, I believe that our briefs signalled some constitutional issues that we think have been raised by the government's case.  As a preview of those arguments, one of them is that it appears that the government's case is essentially trying to prosecute her for and charge her with two crimes for the same underlying conduct.

I say that because the conspiracy count and the § 951 count essentially require at least two people.  We know that for a conspiracy count, it's an agreement between at least two people to commit a crime against the United States.

As for § 951, it requires agency.  A specific -- a closer reading of § 951 actually says that it requires proof that the agent is operating under the direction or control of a foreign government that -- who agrees, excuse me -- to act under the direction or control of a foreign government.

I think that language is important to note, because the conspiracy, the essence of that is an agreement, and § 951 also requires proof of an agreement.  So I think there might be an

1    issue under *Blockburger*, Judge, and we'll brief that as soon

2    as --

3              THE COURT:  Do you want me to issue a briefing

4    schedule, or you'll just file something between now and the next

5    status date?

6              MR. CARRY:  I think setting a briefing schedule might

7    be appropriate.

8              THE COURT:  All right.  What do you propose?

9              MR. CARRY:  We can file our motion to dismiss within

10   45 days.

11             THE COURT:  Mr. Bradley?

12             THE DEPUTY CLERK:  Forty-five days?

13             THE COURT:  Forty-five.  But I want to give enough

14   time for the government to respond and you to reply before the

15   status date.

16             THE DEPUTY CLERK:  I think it's October 26.

17             THE COURT:  All right.  So any dispositive motions

18   should be filed by October 28.  But that might push the 60 days,

19   so I'm concerned about -- you all have 14 days to reply, which

20   would take us to when, Mr. Bradley?

21             THE DEPUTY CLERK:  November 9.

22             THE COURT:  And 60 days out from today takes us to --

23   I'm sorry.  My phone doesn't work well in here.

24             THE DEPUTY CLERK:  Brings us to November 11, which is

25   a Sunday.

1          THE COURT:  So if 60 days, 61 days out is November 12,

2    that's a Monday, right?

3          THE DEPUTY CLERK:  Yes.

4          THE COURT:  And you -- 14 days from October 26 was

5    November 9.  Can you have a reply by the 12th?

6          MR. CARRY:  Yes.

7          THE COURT:  Well, by the 11th.  Well, no.  I don't

8    want any more replies on Sunday nights.  Or my clerks.

9          MR. CARRY:  Understood.

10         THE COURT:  We can push the next status further along

11   if you really need the 45 days.

12         MR. CARRY:  That's preferable.

13         THE COURT:  So let's have your motions due on October

14   28, reply due by November --

15         THE DEPUTY CLERK:  Excuse me.  The 28th is a Sunday.

16         THE COURT:  The 26th, or you want the 29th?

17         MR. CARRY:  The 26th is just fine.

18         THE COURT:  So your motions will be due the 26th,

19   government's response -- can you then calculate 14 days?

20         THE DEPUTY CLERK:  November 9.

21         THE COURT:  November 9.  Reply, Mr. Bradley?

22         THE DEPUTY CLERK:  November 12.

23         THE COURT:  That's a Sunday, I think.  Oh, that's a

24   Monday?

25         THE DEPUTY CLERK:  That's a Monday.

1          THE COURT:  Okay.  Reply November 12, and then let's

2     see if we can do the status hearing the next day, the 13th.

3     What day of the week --

4          THE DEPUTY CLERK:  That's a Tuesday.  You have nothing

5     on your calendar.

6          THE COURT:  All right.  So we can do the 13th.

7     10 a.m.?

8          MR. CARRY:  Perfect.

9          MR. KENERSON:  That's good for the government.

10     Thank you.

11          THE COURT:  All right.  I'll issue the written

12     pretrial publicity order.

13          MR. CARRY:  Great.  One other issue.  It seems as

14     though we've had some trouble getting back her personal

15     possessions.  My understanding is the government has secured and

16     preserved all the information they require from those devices.

17     During an earlier execution of a search warrant, they were able

18     to return her items within, I think, 48 hours.  They continue to

19     possess them.  They have no value to them anymore at this point.

20     They've preserved all the information from them, and they should

21     be returned.

22          THE COURT:  Mr. Kenerson?

23          MR. KENERSON:  Thank you, Your Honor.  I believe

24     Mr. Carry is referring to the specific electronic devices that

25     were seized in the search warrant.

1          THE COURT:  Is that right?  You said personal

2    possessions.  Is that what you're talking about?

3          MR. CARRY:  Yes.

4          MR. KENERSON:  Those are still being examined to

5    see if there is any evidentiary value from the physical items

6    themselves.  I don't believe the exam of them is complete,

7    either, electronically.  So I'm not in a position to say when

8    the government will be ready.

9          THE COURT:  Can you please let Mr. Carry and/or

10   Mr. Driscoll know, once you know when that will be complete, and

11   arrange to have the items returned once your examination of them

12   is complete?  Let them know once you have an estimate of when

13   the examination will be complete, and please follow up to make

14   sure that once it's complete, the items are returned.

15         MR. KENERSON:  As I said, I think we're still

16   undertaking a review to see whether the physical items

17   themselves may have evidentiary --

18         THE COURT:  So you mean whether you're going to need

19   to hold them for trial?

20         MR. KENERSON:  Correct.

21         THE COURT:  Okay.  Just let them know.

22         MR. KENERSON:  Will do.

23         THE COURT:  All right.  Anything else, Mr. Carry or

24   Mr. Driscoll?

25         MR. CARRY:  No, Your Honor.

1          THE COURT:  Mr. Kenerson.

2          MR. KENERSON:  On the speedy trial issue, Your Honor,

3    the government is willing to submit a proposed order to the

4    Court on that front if the Court would like one.

5          THE COURT:  You mean for exclusion of the time?

6          MR. KENERSON:  Correct.

7          THE COURT:  I don't need a written order.  I do find,

8    given the complexity of this case, given the amount of

9    discovery -- you want to be heard on that, Mr. Driscoll?

10         MR. DRISCOLL:  No.  I had something else.

11         THE COURT:  Given the amount of discovery that has

12   been provided, will be reviewed, continues to be provided, the

13   government's state of their investigation, as well as the fact

14   that we now have a motions schedule and there appears to be

15   significant pretrial motions that will be filed, I do find that

16   the interests of justice at this stage outweigh the interests of

17   the defendant and the interests of the public in a speedy trial,

18   and so I will exclude from computation of the Speedy Trial Act

19   the time from today's date till the next status date on November

20   the 13th.  Mr. Driscoll?

21         MR. DRISCOLL:  Thank you, Your Honor.  I just wanted

22   to flag one more issue that hopefully we'll work out with the

23   government but we may set for motion if we can't.  We've had

24   some discrepancies in translations that we've seen.  We've been

25   translating with Ms. Butina and with some other folks, and

1    there's been some, I guess, arguably suggestive translations

2    by the government.  So we want to, at some point, implement a

3    process where we have a referee or somebody to go to that maybe

4    we could agree on with the government when there's a

5    disagreement on translation so that we can be working from the

6    same English translations by the time of trial.

7              THE COURT:  That seems to make sense.  If I can assist

8    in any way, just let me know.

9              MR. DRISCOLL:  Thank you, Your Honor.

10             MR. KENERSON:  Thank you, Your Honor.

11             THE COURT:  Anything further?

12             MR. SAUNDERS:  Not for the government.

13             THE COURT:  All right.  Thank you all.  Have a good

14   afternoon.

15        (Proceedings adjourned at 2:42 p.m.)

16

17

18

19

20

21

22

23

24

25

\* \* \* \* \* \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.


*Bryan A. Wayne*
BRYAN A. WAYNE