UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>    v. )<br>)<br>MARIIA BUTINA, a/k/a )<br>MARIA BUTINA, )<br>)<br>    Defendant. )<br>_____) | Case No.: 1:18-cr-218 (TSC) |

**DEFENDANT MARIA BUTINA'S REPLY TO ORDER TO SHOW CAUSE**

Defendant Maria Butina, by counsel, submits this reply to the Court's Order to Show Cause (Doc. 32), respectfully representing unto this Honorable Court the following:

On September 4, 2018, after conferring in advance with the Office of General Counsel for American University about the release of Maria Butina's personal student records and a discreet set of university records, the undersigned sent a letter to the Vice President and General Counsel of American University to request a copy of Maria Butina's personal student records under the Family Educational Rights and Privacy Act ("FERPA"). That same day the undersigned also sent a subpoena duces tecum seeking the pretrial inspection of a narrow body of other university records.

Ms. Butina's right to access her own educational records is guaranteed by FERPA, as codified at 20 U.S.C. § 1232g and 34 CFR Part 99. Ms. Butina's access to the third-party, non-government business records of American University is available only by subpoena. Because this Court's Local Rules and Fed. R. Crim. P. 17(c) provide no specific direction as to the procedure by which a party may obtain third-party records pursuant to a pretrial Rule 17 subpoena, the undersigned twice consulted with the clerk's office concerning this Court's particular Rule 17 subpoena customs. The undersigned was informed that it was the practice of this Court to permit

1

counsel of record to issue a subpoena duces tecum without the clerk's signature or prior judicial approval and to have any documents returned to counsel's office within 14 days of issuance.

Following such guidance and confirmation, the undersigned sent a FERPA request and separate subpoena duces tecum to American University, the latter of which sought the pretrial production and inspection of the following evidentiary materials:

>    1. A copy of any and all American University campus police reports, investigative notes (typed or handwritten), or other law enforcement materials that concern or relate to any investigative matter concerning Maria Butina.
>
>    2. A copy of any and all documents concerning Maria Butina's complaint about, and American University's subsequent response, inquiry or investigation into, the actions of professor and lecturer Svetlana Savranskava.
>
>    3. A copy of each class roster (and photo roster, if one) for each of Maria Butina's courses at American University.

(*See* Subpoena, attached as Ex. 1.)[1]

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). That "right includes 'at a minimum, . . . the right to put before a jury evidence that might influence the determination of guilt.'" *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). To effect this right, a defendant must have the ability to obtain that evidence.

Here, Ms. Butina is merely exercising her constitutional right to obtain relevant evidence from a third party—material that is critical to the fair evaluation of the government's case and is available through no other means than subpoena. A defendant may issue a subpoena duces tecum to compel the production "of books, papers, [or] documents" for the defense. Fed. R. Crim. P.

---

[1] The subpoena also sought a certificate from the records custodian, authenticating any documents produced, to avoid further burdening the Office of General Counsel with having to produce a witness to assist the defense in laying an evidentiary foundation for their admissibility as a certified business record.

17(c)(1). A defendant may also seek the production of those materials before trial, as Ms. Butina did here after twice confirming with the clerk's office the permissive Rule 17 practices of this Court. A court "may quash or modify" a subpoena under Rule 17(c) "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

In determining whether a defendant's subpoena should be quashed, a court must assess if the subpoena is necessary to permit the defendant to raise a defense. This is generally accomplished by applying the Supreme Court test articulated in *United States v. Nixon*, 418 U.S. 683 (1974). That is, a Rule 17(c) subpoena is proper if the requester establishes:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Nixon*, 418 U.S. at 699-700—a showing that has been distilled into three requirements: "(1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700.[2]

Without divulging trial strategy, attorney mental impressions, and undermining Ms. Butina's fundamental privacy or constitutional interests (although the undersigned is willing to

---

[2] Although Ms. Butina's subpoena satisfies this higher standard under *Nixon*, it bears noting that application of the *Nixon* standard to Rule 17(c) subpoenas to third parties has been rejected by the Southern District of New York. *See United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008) (Scheindlin, J.). According to Judge Scheindlin, a defendant need only make a lesser showing that the subpoena was "(1) reasonable, construed as material to the defense, and (2) not unduly oppressive for the producing party to respond." *Id.* Judge Scheindlin took the "reasonable" and "unduly oppressive" standard from Rule 17(c)(2), and borrowed the "material to the defense" standard from the government's disclosure obligations under Rule 16. Judge Scheindlin based this decision, in part, on the "severely constrained" ability for the accused to obtain discovery as compared to the government's broad powers to seek evidence either through search and seizure as well as grand jury. Because the defendant has no means other than a Rule 17(c) subpoena to obtain discovery from third parties, Judge Scheindlin concluded that it was "fair to ask whether it makes sense to require a defendant seeking to obtain material from a non-party by means of a Rule 17(c) subpoena to meet the *Nixon* standard." *Id.* at 63.

inform the Court of such matters *ex parte* on request),³ Ms. Butina's pretrial subpoena to American University should not be quashed because it was neither unreasonable nor oppressive. To the contrary, the documents requested are relevant, necessary, and material to the preparation of her defense in that they will reveal important evidentiary information as well as witnesses to rebut the government's allegations in this case. The information was sought by the defense in good faith and not in an attempt to conduct a general fishing expedition. Furthermore, nondisclosure would handicap Ms. Butina's ability to present her defense.

The first category of documents sought (American University police reports and investigative materials concerning Ms. Butina) is relevant to her defense, admissible, and specific. Media reports have stated that some American University students were concerned about Ms. Butina's Russian ties and made reports to law enforcement.⁴ As the government has produced no such reports, American University campus police is a relevant potential source for any reports that may exist. The Constitution guarantees criminal defendants the right to confront their accusers. The "right to cross-examination has been held to be an essential purpose of the Confrontation Clause." *United States v. Weiss,* 930 F.2d 185, 197 (2d Cir.1991) (citing *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). "This right is meaningless if a defendant is

---

³ *See, e.g.*, *United States v. Beckford*, 964 F. Supp. 1010, 1030 (E.D. Va. 1997 (a Rule 17(c) matter may be discussed with the court *ex parte* when a "pretrial subpoena would (i) divulge trial strategy, witness lists or attorney work-product; (ii) imperil the source or integrity of subpoenaed evidence; or (iii) undermine a fundamental privacy or constitutional interest of the defendant.").

⁴ *See* Sara Murray, *Alleged Russian agent's infiltration of GOP circles anything but subtle*, CNN (Aug. 2, 2018), *available at* https://www.cnn.com/2018/08/02/politics/maria-butina-republican-circles/index.html ("Twice, classmates reported her actions to law enforcement because they found her comments so alarming, sources said."); *see also* Sarah Nechamkin, *Maria Butina Would Apparently Brag About Being a Russian Spy When She Was Drunk*, THE CUT (Aug. 3, 2018), *available at* https://www.thecut.com/2018/08/russian-spy-bragged-about-being-a-russian-spy-when-drunk.html ("Sources say her comments were so "alarming" that classmates reported her to law enforcement twice.")

denied the reasonable opportunity to obtain material evidence that could be crucial to that cross-examination." *Tucker*, 249 F.R.D. at 67.

The second category of documents sought likewise passes muster under the *Nixon* test. This request seeks a body of non-privileged, business records responsive to a complaint Ms. Butina made to American University regarding a professor of hers who commented to the media about Ms. Butina in a widely-publicized 2017 media report—itself likely a violation of her own FERPA rights.[5] The professor purported to recount classroom discussions as evidence of Ms. Butina's ties to the Russian government and the Trump campaign, and Ms. Butina complained to the university about both the falsity of the statements made and the appropriateness of the professor's non-sanctioned discussions of a student to the public and media. Any such documents the university has regarding this incident are relevant to the defense.

Importantly, neither the first nor second category of requested documents are challenged by the intervening *ex parte* motions to quash. No one has moved for them to be quashed, and these portions of the subpoena should not be quashed.

With regard to the third category of requested documents that are at issue here, this request seeks form class rosters (including pictures, if any) of Ms. Butina's classmates. The government has alleged that Ms. Butina was not a legitimate student at American—but she was. Her classmates are potential witnesses who prepared academic work and projects with her, saw her attend and participate in class, and were aware of her participation and academic performance. As is typical of graduate students, Ms. Butina knows the full names of only a few students, but knows others

---

[5] *See* Tim Mak, *The Kremlin and GOP Have a New Friend—and Boy, Does She Love Guns*, THE DAILY BEAST (Feb. 23, 2017), *available at* https://www.thedailybeast.com/the-kremlin-and-gop-have-a-new-friendand-boy-does-she-love-guns.

by sight, first name or last name. The class rosters will help Ms. Butina work with counsel to locate potential witnesses for the trial in this matter.

Counsel for American University, who had discussions with the undersigned prior to service of the subpoena, has not objected to or moved to quash the subpoena. Rather counsel for American University requested an extension of time to produce records, which the undersigned reflexively granted to yield to the university and assist it in meeting any of its FERPA obligations.

FERPA generally provides that before an institution may disclose a student's education records, it must obtain written consent from the student. 34 CFR section 99.30. There is an exception to this general rule for schools complying with a subpoena or court order, although the exception requires that the institution first make a "reasonable effort to notify" the student of the order or subpoena in advance of compliance. 34 CFR section 99.31(a)(9)(ii). Thus, an institution may produce records in response to a subpoena or court order without student's consent but only after it has made a reasonable effort to notify the student that it intends to do so.

Counsel for American University graciously informed the undersigned that the university intended to provide the records sought, which defense counsel will make available for the government's review and inspection. American University provided notice of the subpoena to the affected students, which is how students received copies of the subpoena. Importantly, counsel for the defense did not serve any students with a subpoena or seek documents from any student. Counsel is also not seeking information to impugn, annoy, harm, or invade the privacy of any student. Counsel merely seeks an evidentiary record that lists the names of Ms. Butina's classmates—a document that contains significantly less than what might be published in an ordinary phone book or student yearbook—to help support the defense, which counsel would

protect and keep confidential. Accordingly, the subpoena is not unduly burdensome or oppressive to any student.

To the extent the Court finds that the subpoena is procedurally defective in any way, the undersigned submits that any defect was not intentional or caused to subvert the function of this Court or improperly expand the bounds of discovery. The undersigned communicated with the clerk's office to confirm this Court's Rule 17 subpoena practices. If that guidance was mistaken, the undersigned respectfully requests that the subpoena be modified accordingly so that justice may be done.

For the foregoing reasons, Defendant Maria Butina respectfully requests that her subpoena duces tecum be affirmed or, in the alternative, modified as is necessary to permit pretrial production and inspection by one or more parties of the material sought, granting such other and further relief as this Court deems just and proper.

Dated: September 22, 2018               Respectfully submitted,

                                        /s/Robert N. Driscoll
                                        Robert N. Driscoll (DC Bar No. 486451)
                                        McGlinchey Stafford PLLC
                                        1275 Pennsylvania Avenue NW, Suite 420
                                        Washington, DC 20004
                                        Phone: (202) 802-9999
                                        Fax: (202) 403-3870
                                        rdriscoll@mcglinchey.com

                                        /s/Alfred D. Carry
                                        Alfred D. Carry (DC Bar No. 1011877)
                                        McGlinchey Stafford PLLC
                                        1275 Pennsylvania Avenue NW, Suite 420
                                        Washington, DC 20004
                                        Phone: (202) 802-9999
                                        Fax: (202) 330-5897
                                        acarry@mcglinchey.com

                                        *Counsel for Defendant*