**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No.: 1:18-cr-218 (TSC) |
| | ) | |
| MARIIA BUTINA, a/k/a | ) | |
| MARIA BUTINA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT MARIA BUTINA'S**
**MOTION FOR ISSUANCE OF RULE 17(c) SUBPOENA**
**(to American University)**

Defendant Maria Butina submits this memorandum in support of her motion for an order authorizing the issuance of the attached Rule 17(c) subpoena duces tecum, stating the following.

**I. Background**

The indictment charges Maria Butina with acting in the United States as an agent of a foreign government without prior notification to the Attorney General (in violation of 18 U.S.C. § 951) and conspiracy to do the same (in violation of 18 U.S.C. § 371). The government has alleged that Ms. Butina acted as a Kremlin-agent of influence and that her tenure at American University was merely a "cover." A likely defense at trial will be that Ms. Butina's academic pursuits were sincere and that she was an ambitious graduate student who sought scholastic rigor, not a "cover."

In order to develop this defense, Ms. Butina requires pretrial access to documents that are in the possession of American University. These documents are only available by subpoena, and the issuance of this subpoena is necessary to assist in an orderly trial and to preserve Ms. Butina's constitutional rights. Together with the reasons stated below, Ms. Butina requests that the court exercise its discretion to order the pretrial production of the requested documents within 30 days to provide her adequate time to inspect the documents and prepare her defense with counsel. Prior

1

to the filing of this motion, counsel for American University indicated that 30 days would be sufficient to meet its notification obligations under the Family Educational Rights and Privacy Act ("FERPA"), as well as comply with any court-ordered subpoena.

## II. <u>Legal Standard</u>

A Rule 17(c) subpoena duces tecum is the vehicle for securing production of documents or objects at a specified time and place before trial. According to its terms:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). "Rule 17(c) reflects the command of the Sixth Amendment that the full power and processes of the courts are available to defendants in criminal cases to help them defend against the charges brought by the Government." *United States v. Beckford*, 964 F. Supp. 1010, 1016 (E.D. Va. 1997). "Its chief innovation was to expedite the trial by providing a time and place *before* trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) (emphasis added). The district court has discretion to order the production of documents in advance of trial. *See United States v. Vo*, 78 F.Supp. 3d 171, 178 (D.D.C. 2015).

The defendant may issue a subpoena duces tecum to a third party. The Supreme Court has held that pretrial production by third parties pursuant to Rule 17(c) is appropriate where the requesting party establishes:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974)—a showing that has been distilled into three requirements: "(1) relevancy; (2) admissibility; [and] (3) specificity." *Id.* at 700. Ms. Butina's proposed Rule 17(c) subpoena to American University (at Doc. 39-2) satisfies this test.

## III. <u>Argument</u>

Maria Butina is exercising her constitutional right to obtain relevant evidence from American University—material that is critical to the fair evaluation of the government's case and is available through no other means than subpoena. Specifically, Ms. Butina seeks the pretrial production and inspection of the following items, as more particularly set forth in the proposed subpoena:

1. A copy of any American University campus police reports, investigative notes (typed or handwritten), or other law enforcement materials that concern or relate to any campus police investigation into Maria Butina.

2. A copy of any and all documents concerning Maria Butina's complaint about, and American University's subsequent response, inquiry or investigation into, the actions of professor and lecturer Svetlana Savranskava.

3. A copy of each class roster (and photo roster, if one) for each of Maria Butina's courses at American University.

The requested documents are relevant, necessary, and material to the preparation of her defense in that they will reveal important evidentiary information as well as witnesses to rebut the government's allegations in this case. Furthermore, this information is sought in good faith and not in an attempt to conduct a general fishing expedition.

### A. The Requested Documents are Relevant, Admissible, and Specific

The first category of requested documents (American University police reports and investigative materials concerning Ms. Butina) is relevant to the defense, admissible, and specific. The government has charged Ms. Butina with acting as a foreign agent and conspiring to do the

same. It claims that she "operated in the United States as an agent of the Russian Federation, at the direction of the Russian Official, while outwardly portraying herself to be a private individual living in this country as a foreign student." (Doc. 26 at 4-5.) Media reports state that some American University students were concerned about Maria's Russian ties and made reports to law enforcement.[1] However, the government produced no law enforcement documents in discovery to corroborate this account, making the American University campus police a relevant source for reports if such reports even exist.

An obvious defense at trial will be showing Maria was a legitimate student. Yet, she cannot effectively present this defense without access to all reports relating to her time at American University. "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). That "right includes 'at a minimum, . . . the right to put before a jury evidence that might influence the determination of guilt.'" *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). To effect this right, a defendant like Maria Butina must have the ability to obtain that evidence.

The second category of documents also passes muster under the *Nixon* test. This request seeks a body of non-privileged, business records responsive to a complaint Maria made to American University regarding a professor of hers who commented to the media in a widely-

---

[1] *See* Sara Murray, *Alleged Russian agent's infiltration of GOP circles anything but subtle*, CNN (Aug. 2, 2018), *available at* https://www.cnn.com/2018/08/02/politics/maria-butina-republican-circles/index.html ("Twice, classmates reported her actions to law enforcement because they found her comments so alarming, sources said."); *see also* Sarah Nechamkin, *Maria Butina Would Apparently Brag About Being a Russian Spy When She Was Drunk*, THE CUT (Aug. 3, 2018), *available at* https://www.thecut.com/2018/08/russian-spy-bragged-about-being-a-russian-spy-when-drunk.html ("Sources say her comments were so "alarming" that classmates reported her to law enforcement twice.")

publicized 2017 article—itself a likely violation of Maria's own FERPA rights.[2] The professor purported to recount classroom discussions as evidence of Maria's ties to the Russian government and the Trump campaign, and Maria complained to the university about both the falsity of the statements made and the appropriateness of the professor's non-consensual discussions of a student to the public and media. Any such documents the university has regarding this incident are relevant to the defense because they will show that Maria utilized school services like a student, not the Russian Embassy to seek refuge or to change her student status like a foreign agent.

The third category of documents seeks form class and photo rosters of Maria's classmates. The government alleges that she was not a legitimate student at American University although she was. Maria put on a backpack, walked to school, attended class, and studied at the library nearly every day. Her classmates are potential witnesses who prepared academic work and projects with her, saw her attend and participate in class, and were aware of her participation and academic performance. As is typical of graduate students, Maria knows the full names of only a few students, but knows others by sight, first name or last name. The class and photo rosters will help her work with counsel to locate potential witnesses for the trial in this matter.

### B.  FERPA Does Not Provide a Privilege or Qualified Immunity Against Disclosure of Student Records

Prior to the filing of this motion, the undersigned conferred with counsel for American University, who indicated that the university had no position with regard to the relief sought. Only the university has standing to contest the first and second category of requested documents.

---

[2] *See* Tim Mak, *The Kremlin and GOP Have a New Friend—and Boy, Does She Love Guns*, THE DAILY BEAST (Feb. 23, 2017), *available at* https://www.thedailybeast.com/the-kremlin-and-gop-have-a-new-friendand-boy-does-she-love-guns.

With regard to the third category of requested documents, FERPA does not provide a privilege against the disclosure of student records. *Rios v. Read*, 73 F.R.D. 589 (E.D.N.Y. 1977) ("The statute says nothing about the existence of a school-student privilege analogous to a doctor-patient or attorney-client privilege."). Instead, FERPA expressly permits the production of student records in compliance with a "judicial order" or "any lawfully issued subpoena." 20 U.S.C. § 1232g(b)(2)(B).

This circuit has not specifically addressed whether a student has a privilege against the disclosure of his or her educational records under § 1232g(b)(2)(B), let alone a right to even intervene in an action to challenge the same. However, other state and federal courts have, and all of these courts have concluded that FERPA does not erect "a privilege against disclosure of student records to be invoked by the school, the student, or his or her parents." *Zaal v. State*, 602 A.2d 1247, 1255-1256 (Md. 1992) (discussing the production of school records by a defendant in a criminal case). *See also Catrone v. Miles*, 160 P.3d 1204, 1211-1212 (Ariz. Ct. App. 2007) (discussing the production of school records by a party in a civil case, further holding that FERPA creates no independent privilege for educational records); *Bunch v. Artz*, 71 Va. Cir. 358, 2006 WL 2411428, at *7 (Portsmouth City Aug. 15, 2006) (FERPA does not provide a statutory ban on disclosure of covered information); *People v. Bachofer*, 192 P.3d 454, 460 (Colo. Ct. App. 2008) (FERPA does not create a privilege against disclosure of school records).

FERPA only requires educational institutions, as a condition of receiving federal funding, to maintain the confidentiality of student records.

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information, as defined in paragraph (5) of subsection (a) of this section) of students without the written consent of their parents to any individual, agency, or organization[.]

20 U.S.C. § 1232g(b)(1). "Thus, FERPA does not absolutely prohibit disclosure of educational records but 'imposes a financial penalty for the unauthorized disclosure of educational records.'" *In re Subpoena Issued to Smith*, 155 Ohio Misc. 2d 46, 921 N.E. 2d 731, 732-733 (2009).

There is some disparity among the courts as to whether the confidentiality of student records is a factor in considering their discoverability. "Some federal district courts have said that a party seeking access to student records must demonstrate a genuine need for the information sought, and that need must outweigh the privacy interests of the student." *Id.*; *Catrone*, 160 P.3d at 1213 (cataloging a few other court decisions). However, FERPA itself does not create any kind of qualified immunity from disclosure, and such a burden would be inconsistent with the plain language of the statute that permits disclosure to comply with "a judicial order" or "any lawfully issued subpoena." 20 U.S.C. § 1232g(b)(2)(B).

In *University of Pennsylvania v. Equal Employment Opportunity Commission*, 493 U.S. 182 (1990), the Supreme Court declared that "[w]e are especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant concerns but has not provided the privilege itself." *Univ. of Penn.*, 493 U.S. at 189. It follows that because FERPA is wholly silent regarding any form of privilege or requisite showing that must be met to seek educational records, "there is no heightened burden on a party seeking student records." *Maggard v. Essar Global Ltd.*, No. 2:12-cv-00031, 2013 WL 6158403, at *7 (W.D. Va. Nov. 25, 2013). Indeed, as the U.S. District Court for the Western District of Virginia observed in *Maggard*:

> I find doubtful that the Fourth Circuit, if called upon to do so, would find the existence of such a heightened burden on a party seeking student records. I find so because the statue [sic] itself is silent regarding any such burden. Had the legislature intended for there to be such a burden, it simply could have explicitly placed it within the body of the statute. Instead, it chose not to do so. That being the case, I find that Maggard [[the plaintiff]] has no burden to show that he has a "genuine need" for the information sought that outweighs Rewant Ruia's [[the student]]

privacy interest. Instead, under FERPA, the only requirement is that the student be
notified of the subpoena in advance of compliance therewith by the educational
institution.

*Id.* at \*7 (Sargent, M.J.). *See also Gaumond v. Trinity Repertory Co.*, 909 A.2d 512, 519 (R.I.

2006) ("[t]he mere reference in [a] statute to the confidential nature of . . . records is insufficient

to create a statutory privilege" or immunity from disclosure).

### C.  The Affected Students Have no Right to Intervene in this Action to Challenge any Subpoena

Additionally, with regard to the third category of documents, the affected students do not

have a right to intervene in an action to challenge a lawfully-issued court order or subpoena.

Generally, the recipient of the subpoena or party with a legitimate interest in the targeted records

have standing to contest a subpoena duces tecum. That is, "a party may have standing to quash a

subpoena directed to a third party where that subpoena infringes on the moving party's rights."

*Amobi v. D.C. Dep't of Corrections*, 257 F.R.D. 8, 10 (D.D.C. 2009) (albeit holding that the party

here, the D.C. Department of Corrections, did not have standing to move to quash a subpoena

seeking documents from the U.S. Attorney's Office); *cf. Khoui v. Darui*, 248 F.R.D. 729, 732 n.6

(D.D.C. 2008) (noting that parties have standing to move to quash subpoenas seeking their

financial records from third-party banks because they have a legitimate interest in protecting their

private financial information); and *see United States v. Vo*, 78 F.Supp. 3d 171, 178 (D.D.C. 2015)

(citing *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982) (standing exists "if the subpoena

infringes upon the movant's legitimate interests.")).

However, as discussed above, FERPA explicitly authorizes the production of student

records in compliance with a "judicial order" or "any lawfully issued subpoena." 20 U.S.C. §

1232g(b)(2)(B). *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 5 (D.D.C. 2008) (same);

*Warner Bros. Records, Inc., et al. v. Does 1-6*, 527 F. Supp. 2d 1, 3 (D.D.C. 2007) ("Though

FERPA generally prohibits disclosure of certain records by federally-funded educational institutions, it expressly provides that protected information can be disclosed pursuant to a court order."). *See also Varner v. District of Columbia*, 891 A.2d 260, 273 at n.13 (D.C. 2006) (noting that a university "at least in the absence of a subpoena" is precluded from releasing student records under FERPA). Student consent is not required when a judicial order or subpoena requires production of records, only notice from the institution. *Maggard*, 2013 WL 6158403, at *7 ("Under FERPA, the only requirement is that the student be notified of the subpoena in advance of compliance therewith by the educational institution.").

Students do not have a right to intervene in an action to contest a court order or subpoena for educational records because Congress provided no such right for them to do so. Indeed, Congress did not even create a cause of action under FERPA for a private remedy. *See Giradier v. Webster Coll*, 563 F.2d 1267-1277 (8th Cir. 1977); *M.P. v. Indep. Sch. Dist. No. 721*, 200 F. Supp. 2d 1036, 1045 (D. Minn. 2002). Accordingly, a student's legitimate interest in his or her records extends no further than the right to notification of the disclosure of records from their educational institution. *See* 20 U.S.C. § 1232g(b)(2)(B).

The applicable department regulations created by the Secretary of Education appear to afford an opportunity upon notice for a student or parent to seek "protective action" by bringing before the court an objection they may have to the requested disclosure and production. *See* 34 C.F.R. 99.31(a)(9)(ii). However, Congress did not. In this instance, the district court case *Whittaker v. Morgan State University*, 842 F. Supp. 2d 845 (D. Md. 2012) provides guidance.

In *Whittaker*, a former professor brought an action against the state university and others, alleging violations of various rights in connection with his termination of employment. *Id.* The district court ordered the defendant Morgan State University to produce student transcripts for any

students who lodged complaints against the professor. Affected students were notified of the impending release of their transcripts under FERPA. Two students filed letters with the court to object to the release of their transcripts. *Id.* at 846. The court ruled that the students lacked standing to object and intervene in the action because FERPA provided no statutory mechanism for third parties to file formal objections with the court. *Id.* at 847. As reasoned by the U.S. District Court for the District of Maryland:

> Although FERPA requires notification by the university to the students (or parents if a student is a minor) in advance of compliance with a judicial order, *see* 20 U.S.C. § 1232g(b)(2)(B), the statute does not contain a mechanism by which students may file formal objections with a court. The applicable regulation, 34 C.F.R. § 99.31(a)(9)ii), purports to grant a right to students to seek protective action, but it is unlikely that a federal agency can confer jurisdiction upon a court where Congress has refrained from doing so.

*Whittaker*, 842 F. Supp. 2d at 846 (D. Md. 2012) (Bredar, J.). *See also Keller v. Potomac Elec. Power Co.*, 261 U.S. 428, 444 (1923) (stating that the jurisdiction of Article III courts is limited to deciding cases and controversies and "does not extend to . . . administrative or legislative issues or controversies").

The *Whittaker* decision has never been reversed by the Fourth Circuit, and no other courts have disagreed with its holding. In fact, the U.S. District Court for the Eastern District of Michigan appears to have recently adopted the rationale of *Whittaker* in a 2016 decision styled *C.R. v. Novi Community School District*, No. 14-14531, 2016 WL 126250, at *6, n.1 (E.D. Mich. Jan. 12, 2016).

This court should rule similarly. However, if the court were inclined to grant any affected students an opportunity to challenge the subpoena, there would still be no reason to deny the relief with respect to the first and second category of requested documents—absent an appropriate challenge—while the court takes any third-party student motion to quash under advisement. In this scenario, the court should deny any motion to quash because Maria Butina merely seeks an

evidentiary record that identifies her classmates, a document that contains no more than what might be published in a school yearbook or graduating class booklet. She does not seek this information to harass, impugn, annoy, harm, or invade the privacy of any student. To the contrary, she seeks this information to help support her defense.[3] Yet, even if this court were to grant individual relief to students, such relief would only apply to those students specifically, and American University would still be obligated to respond to the subpoena with any movant student's information redacted.

## IV. <u>Conclusion</u>

For the foregoing reasons, Defendant Maria Butina respectfully requests that the court grant her motion, authorizing the issuance of the attached Rule 17(c) subpoena to permit pretrial production and inspection of the requested documents, granting such other and further relief as the court deems just and proper.

---

[3] And if a name, address, telephone listing, email address, and other identifying information are permissibly available pursuant to a lawfully-issued subpoena or court order, *see Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d at 5-6 (holding that "[b]ecause Plaintiffs' subpoena sought to discover directory information and was issued pursuant to a Court order, FERPA does not prohibit disclosure of the information sought by Plaintiffs' subpoena"), then certainly Ms. Butina's request for class and photo rosters—in a criminal case where her liberty interests are at stake—to fully develop her defense and help identify her classmates with counsel should be, too.

Dated: October 12, 2018                    Respectfully submitted,

                                           /s/Alfred D. Carry
                                           Alfred D. Carry (DC Bar No. 1011877)
                                           McGlinchey Stafford PLLC
                                           1275 Pennsylvania Avenue NW, Suite 420
                                           Washington, DC 20004
                                           Phone: (202) 802-9999
                                           Fax: (202) 330-5897
                                           acarry@mcglinchey.com

                                           /s/Robert N. Driscoll
                                           Robert N. Driscoll (DC Bar No. 486451)
                                           McGlinchey Stafford PLLC
                                           1275 Pennsylvania Avenue NW, Suite 420
                                           Washington, DC 20004
                                           Phone: (202) 802-9999
                                           Fax: (202) 403-3870
                                           rdriscoll@mcglinchey.com

                                           *Counsel for Defendant*