UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | |
| | . | |
| Plaintiff, | . | CR No. 18-0218 (TSC) |
| | . | |
| v. | . | |
| | . | |
| MARIIA BUTINA, a/k/a | . | Washington, D.C. |
| MARIA BUTINA, | . | Thursday, December 6, 2018 |
| | . | 11:09 a.m. |
| Defendant. | . | |

. . . . . . . . . . . . . . .

TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE TANYA S. CHUTKAN
UNITED STATES DISTRICT JUDGE


<u>APPEARANCES</u>:

For the Government:        ERIK M. KENERSON, AUSA
(Via Telephone)            THOMAS N. SAUNDERS, AUSA
                           U.S. Attorney's Office
                           National Security Section
                           555 Fourth Street, NW
                           Washington, DC 20530


For the Defendant:         ROBERT N. DRISCOLL, ESQ.
(Via Telephone)            ALFRED D. CARRY, ESQ.
                           McGlinchey Stafford, PLLC
                           1275 Pennsylvania Avenue, NW
                           Suite 420
                           Washington, DC 20004


Court Reporter:            BRYAN A. WAYNE, RPR, CRR
                           U.S. Courthouse, Room 4704-A
                           333 Constitution Avenue, NW
                           Washington, DC 20001



Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription

PROCEEDINGS

THE DEPUTY CLERK:  Your Honor, we have criminal action 18-218, United States of America versus Mariia Butina. We have Mr. Erik Kenerson and Mr. Thomas Saunders representing the government, appearing by phone, and we have Mr. Alfred Carry and Mr. Robert Driscoll representing the defendant, who is not present, also appearing by phone.

Mr. Driscoll, please address the nonpresence of your client, please.

MR. DRISCOLL:  This is Robert Driscoll.  We waive the presence of Ms. Butina at this hearing.

THE COURT:  All right.  Thank you, Mr. Driscoll.

And I'll ask you, because we are doing this over the phone, which is actually something I'm very reluctant to do in criminal cases, I'm going to ask you, each time each of you speaks, to identify yourself again.  I know it's not sort of intuitive, but my court reporter needs to make sure he gets the transcript correctly.

So we're here for a telephone conference.  The parties asked for this status hearing regarding developments in the case.  I will tell you that we are having this hearing on the record, which is my preference always, but I do understand there are matters that the defense wishes to have under seal.

If we can possibly do that, I would like to do as much as I can in open court.  Then, whatever confidential matters you

1    want to move to seal, you can do that at the end, and I will

2    hear you on why they should be sealed, because, as you know,

3    there is a presumption that matters in court are not held under

4    seal.  All right?

5        So, Mr. Driscoll, do you want to go first?

6            MR. DRISCOLL:  Excuse me?  I didn't hear that,

7    Your Honor.  This is Bob Driscoll.

8            THE COURT:  Yes.  So we had a status hearing date of

9    December 19th.  Let's just do the housekeeping stuff.  Do you

10   want to vacate that status hearing?

11           MR. DRISCOLL:  Yes.

12           THE COURT:  You had a subpoena that I had granted, a

13   motion to issue a subpoena to American University.  I granted

14   the subpoena on October 31st.  I believe the due date on the

15   subpoena was December 17th.  What do you want to do with that?

16           MR. DRISCOLL:  We should probably leave that for right

17   now, though I suspect we'll be vacating it within a day or two.

18           THE COURT:  Okay.  Is there anything else that you or

19   Mr. Kenerson can discuss or want to discuss now that we can do

20   in open court?

21           MR. DRISCOLL:  This is Driscoll again.  From our side,

22   I do not believe so.

23           THE COURT:  All right.

24       Mr. Kenerson, do you have a position on whether the next

25   portion of the discussion should be under seal?

1        MR. KENERSON:  This is Erik Kenerson, and the

2    government does not take a position on that request.

3        THE COURT:  All right.

4    Okay.  I'm going to close the courtroom, and I'm going to

5    have Mr. Driscoll proffer to me why I should have this under

6    seal.  If I don't find that he has proffered sufficient reason

7    to place this under seal, I will reopen the courtroom for the

8    remainder of the proceeding.

9    Thank you, ladies and gentlemen.

10    (Spectators exit courtroom.  Hearing proceeds under seal.)

11    [Unsealed by the Court December 13, 2018.]

12        THE COURT:  All right.  Mr. Driscoll, the courtroom

13    has been cleared.  Can you tell me why this portion of the

14    hearing should be placed under seal?

15        MR. DRISCOLL:  Thank you, Your Honor.  A couple

16    reasons.  First, the plea agreement has not been signed yet by

17    our client, and while we're confident it will be signed either

18    later today or tomorrow, in the event there was a snag that

19    happened, the fact of her being willing to plead guilty to a

20    count should not be public.

21        THE COURT:  Why not?  I mean, I have criminal cases

22    before me every day where the parties put forth on the record

23    that they're involved in plea negotiations, or they're close,

24    or they have one but it hasn't been signed.  That's not unusual.

25    Why should I place that information under seal in this

1    case, especially when you're the only party requesting it?

2         MR. DRISCOLL:  Leaving that aside, Your Honor, I think

3    the main reason this issue came up is that there is a potential

4    conflict issue that the government has raised regarding defense

5    counsel which we need the Court's advice on in terms of --

6         THE COURT:  Wait, wait.  I asked you a question,

7    Mr. Driscoll.  You can't put it aside.  I have closed the

8    courtroom, and I want you to tell me why I should close the

9    courtroom and not open it to the general public as is required.

10        So tell me why the fact that you have a plea agreement but

11   have not yet signed it and are close to signing it should be

12   confidential and placed under seal.

13        MR. DRISCOLL:  Well, Your Honor -- I mean, obviously,

14   the right to access is not absolute.

15        THE COURT:  Right.

16        MR. DRISCOLL:  And we're talking about a temporary

17   exclusion.  It could be unsealed as soon as the --

18        THE COURT:  Why?

19        MR. DRISCOLL:  -- plea is filed with --

20        THE COURT:  Why?  Why is the fact that -- you

21   know, Mr. Driscoll, I have to tell you, I'm a little perplexed.

22   In this case, you've filed several motions for transportation

23   of your client to the U.S. Attorney's Office, and you asked that

24   that information be placed under seal; and that was certainly

25   appropriate, and the government joined in that request.  And I

1    placed those requests under seal because the possibility of

2    a defendant's cooperation is always something that is very

3    sensitive.

4        Then you all filed a joint motion on the public docket

5    saying that you were in plea negotiations which was, you know --

6    that's out there.  You all filed that on the public docket.

7    So the fact that we're having -- you know, I'm not trying to

8    be coy or anything, but you already put that out there.

9        So the fact that you may be close to signing an

10   agreement is not -- if you can tell me that there's some kind

11   of cooperation issue that you're trying to keep confidential,

12   or there's safety issues, or you don't want to alert other

13   witnesses, or the investigation is ongoing, I'll hear you.

14   But Mr. Kenerson hasn't proffered that.  You're asking that

15   this be kept under seal, and you haven't given me a reason.

16           MR. DRISCOLL:  Your Honor, the plea is conditioned

17   on the conflict issue that we're going to discuss.

18           THE COURT:  Okay.  I'll hear you.

19           MR. DRISCOLL:  If the plea portion -- the plea

20   portion of this I don't have a problem being on the public

21   record, but the issue is that the conflict issue that we were

22   going to discuss second, the plea is conditioned on resolving

23   that issue, and I just didn't want it to be out there --

24           THE COURT:  Okay.

25           MR. DRISCOLL:  -- for that --

1          THE COURT:  All right.  So this --

2          MR. DRISCOLL:  -- until we can resolve that.

3          THE COURT:  All right.  The preceding hearing, this

4    preceding exchange, is not going to be on the -- well -- it is.

5    All right.  Let's hear about the conflict.

6          MR. DRISCOLL:  Okay.  Thank you, Your Honor.

7        The government raised recently, within the last several

8    days, with defense counsel their view that there was possible

9    conflict relating to defense counsel and wanted to explore the

10   possibility of having conflicts counsel appointed for Ms. Butina

11   to make sure she was comfortable that her plea would be knowing

12   and voluntary.

13       The conflict raised by the government, I think the

14   government does not think there's been any violation of order

15   by defense counsel, but due to circumstances regarding recorded

16   calls that the government had of Ms. Butina and to certain

17   journalists, the government raised the concern to us; and we

18   wanted to raise it with the Court so that there would be no

19   question when the plea is entered that the plea is knowing and

20   voluntary, and we wanted to kind of preemptively, if necessary,

21   get Ms. Butina separate counsel briefly to advise her on her

22   rights, to make sure that she got her constitutional right to

23   conflict-free advice.

24          THE COURT:  All right.

25       Mr. Kenerson, can you provide the Court additional

1    information, please?

2              MR. KENERSON:  Certainly.  This is Erik Kenerson

3    right now.

4              THE COURT:  Or Mr. -- oh, I'm sorry.  Whoever is

5    speaking for the government.  I understand there's --

6              MR. KENERSON:  No, this is Erik Kenerson.

7              THE COURT:  Okay.

8              MR. KENERSON:  I think Mr. Driscoll is correct

9    about the conflicts issue.  What we had hoped to do was file

10   pleadings, possibly joint pleadings, with the Court laying out

11   the issues surrounding the conflict, and then we wanted to raise

12   the issue with the Court so you knew it was coming when we

13   scheduled the plea because we do want to have the issue resolved

14   prior to the entry of any plea that defendant might make.

15             THE COURT:  Well, a couple of things.  If you want --

16   and I agree.  If there's a potential conflict, I would certainly

17   want counsel appointed for Ms. Butina to make sure her plea,

18   should she wish to enter one, is in fact knowing and voluntary.

19        But who's going to -- I mean, I would assume that I

20   would have to be involved unless -- I don't think it would be

21   appropriate for you to find her a lawyer, and I don't think it

22   would be appropriate for her counsel to find her a lawyer.

23   So I assume you're asking the Court's assistance in appointing

24   counsel for her.  Right?

25             MR. KENERSON:  We would agree, yes.  The purpose of

scheduling this call, I think from our perspective, was largely
to alert the Court that this was coming in terms of scheduling,
and we will follow up by filing a pleading asking the Court to
take whatever actions the Court deems appropriate.

THE COURT:  Okay.  Well, if you want, I can appoint
counsel upon oral motion.  I can get someone from Mr. Kramer's
office.  They're highly experienced and highly regarded lawyers
over there, unless there's -- would that be appropriate?

MR. KENERSON:  I think it would.

THE COURT:  Mr. Driscoll?

MR. DRISCOLL:  Yes, Your Honor.  I mean, I'm not sure
there's a conflict, but I think this is probably the fastest way
to resolve it.  So I agree that I think, in this instance, it
doesn't do any harm to have her get the advice.

THE COURT:  And since we are in closed session, can
you tell me -- I mean, I obviously need to know the nature of
what you think this conflict is.

Mr. Kenerson, maybe you could elucidate me.

MR. KENERSON:  Yes, Your Honor.  And this is Erik
Kenerson again for the court reporter.

THE COURT:  Thank you.

MR. KENERSON:  The basic nature of the potential
conflict is that this Court, I think, issued in an order back
in September regarding Local Rule 57.7.  The government has some
jail calls from Ms. Butina in which she is talking to a reporter

1    numerous times on those calls.  She makes some references on

2    those calls to individuals who could be -- we don't know that

3    they're defense counsel, but shares first name with defense

4    counsel potentially acting as go-between at a certain point.

5    That's part one of the potential conflict.  Part two is --

6            THE COURT:  Wait.  So, wait.  Stop.  Part one is a

7    potential conflict.  Do you see a conflict because you believe

8    she's acting at the behest of her attorneys or as a conduit for

9    her attorneys to violate the Court's order?

10            MR. KENERSON:  It's -- someone viewing that in the

11   light least favorable to defense counsel might be able to argue

12   that this is some quantum of evidence that defense counsel

13   possibly were engaged in assisting Ms. Butina in violating the

14   Court's order.

15            THE COURT:  All right.  But that goes to whether

16   counsel, with the aid of his client, violated my -- and I'll use

17   the colloquial term for it, my "gag order."  How does that go

18   to -- and maybe you'll tell me; I cut you off.  But how does

19   that go to the voluntariness of her plea?

20            MR. KENERSON:  So if there is an allegation that

21   defense counsel assisting her somehow in violating the, again,

22   to use the colloquial term the "gag order," that would give

23   defense counsel a reason to want to basically plead the case

24   to avoid that potential violation from becoming public.  And

25   curry favor with the government.

1          THE COURT:  It's almost like a law school exam.  Okay.

2      All right.  Is that it, Mr. Kenerson, and is that your

3  reason for thinking that there might be a conflict here?

4          MR. KENERSON:  That is -- I mean, so that's part one,

5  conflict.

6          THE COURT:  Okay.

7          MR. KENERSON:  Part two is of the same vein.  It's not

8  jail calls.  It's inmates having reported that Ms. Butina had

9  told other inmates to go talk to the media at the advice of her

10  counsel.  So a different factual basis, but it would be the same

11  potential conflict.

12          THE COURT:  Okay.  So, as to the ability to enter into

13  a plea agreement, do you have any concerns, Mr. Kenerson, as to

14  whether Ms. Butina's desire to plead guilty is being driven by

15  other factors or other people, other than the advice of her

16  counsel?  Putting aside the media stuff.

17          MR. KENERSON:  Putting aside the media stuff?

18          THE COURT:  Yes.

19          MR. KENERSON:  No.

20          THE COURT:  In other words, are you concerned that

21  third parties are influencing her in her decision to plead

22  guilty or not or to otherwise provide information in this case?

23          MR. KENERSON:  No.

24          THE COURT:  Okay.  All right.

25      Mr. Driscoll, do you wish to be heard further?

1          MR. DRISCOLL:  Yes, Your Honor.  Thank you.  This

2     is Bob Driscoll for the defense, for the court reporter.

3          I think the important thing, at least, for why I think this

4     may not require conflicts counsel -- though, if the Court wants

5     it and that's the best way to do it, then I'm happy do it -- is

6     first of all, we negotiated virtually this entire plea without

7     the defense being aware that the government, you know, thought

8     there was a violation.  And, in fact, the government's been

9     express that there -- I don't think there's an extant violation

10    of the gag order, to use the term.

11         The circumstances, just so the Court's aware, Ms. Butina

12    has a friendship with a particular journalist that predates all

13    of this.  The journalist was working on a story about Ms. Butina

14    prior to any of this coming up, prior to her Senate testimony,

15    prior to her arrest, and had numerous on-the-record conversations

16    with her prior to any of this happening.

17         At the time the gag order was entered, I took the step of

18    informing the journalist that, although he could continue to

19    talk to Ms. Butina, he could not use any of their post gag-order

20    conversations as the basis for any reporting, and the journalist

21    has not, in any event, made any public statement or done any

22    public reporting on the case to date.

23         So that's the summary from our end.  So I don't think

24    there's necessarily a need for conflicts counsel, because I

25    don't think there's a potential violation of the gag order

1    because there's been no public statements by Ms. Butina or by

2    defense counsel, much less public statements in violation of

3    the gag order.  However, we want to expedite the process, and

4    if there's a concern on anybody's part that the Court shares,

5    we're happy to go through the process of having conflicts

6    counsel appointed.

7            THE COURT:  Well, putting aside the questionable

8    advisability of having your client talk to a reporter while

9    she is pending trial and there's a gag order present -- and I

10   understand you told the reporter that they couldn't make any

11   public statements, but as a former criminal defense attorney

12   myself, I find that curious strategy.

13       However, I think, in an abundance of caution, it does make

14   sense to have ethics counsel assess the situation given that --

15   a couple of things.  One is that this is a potential plea

16   agreement involving a foreign national, and I want to make

17   sure that we dot our i's and cross or t's and don't have any

18   questions about the voluntariness and the defendant's knowing

19   waiver of her rights.

20       So what I'm going to do is contact Mr. Kramer and have

21   him appoint a counsel from his office for the limited purpose

22   of acting as ethics counsel, to make sure that there has not

23   been a conflict of interest on a part of the defense counsel

24   in this case.

25       And based on what I'm hearing, I'm taking no position on

1    whether there has been, Mr. Driscoll, and I appreciate your

2    willingness to help ensure that there has not been.  But I will

3    appoint counsel for that limited purpose.  Once counsel has made

4    an assessment -- and I'm hoping that will be relatively

5    quickly -- based on that assessment, then we can move forward.

6         Now, Mr. Driscoll or Mr. Kenerson, when did you hope to

7    have this plea entered?

8         MR. DRISCOLL:  This is Bob Driscoll.  I think,

9    as soon as feasible, I think we can finalize the documents.

10   Mr. Kenerson can specify.  I think the documents can be

11   finalized today, and I could take them over to her -- and we've

12   been talking to her about drafts and whatnot, but we'd probably

13   need about 24 hours to make sure that the final-final she's

14   comfortable with and that everything's explained as much as

15   she wants and we answer any questions.  So, I mean, we could

16   be ready to enter it early next week.

17        THE COURT:  All right.  Well, let's pause that

18   process.  I'm sure I can get someone from Mr. Kramer's office

19   to do an assessment as expeditiously as possible, so what I'm

20   going to do is make -- I'm going to call Mr. Kramer.  I will

21   then issue a minute order, unless you all tell me not to,

22   appointing someone from the Federal Defender's Office for a

23   limited purpose.

24        I don't know how you want me to phrase it in this case.

25   What do you want me to call it?  I mean, I'm not sure -- I have

1    to tell you that I'm not even sure this conflict -- let's get

2    back to this: Why should all of this be under seal?

3         MR. DRISCOLL:  Your Honor, we'd prefer that this be

4    under seal because it's -- I mean, it's allegations regarding

5    my conduct.  And I think the government doesn't think there's a

6    substantive issue, or at least they've told me there isn't, and

7    so I think having this all out in public both disparages the

8    defendant and counsel, at least some.

9         And so it could -- and, frankly, with it being public

10   would then exacerbate the risk of any conflict, I would suggest,

11   to the extent one exists, by kind of raising the issue more

12   squarely.  I mean, again --

13        THE COURT:  Well, I will tell you --

14        MR. DRISCOLL:  -- we're in the odd position where if

15   no one ever raised the issue, it -- but now the government has

16   raised the issue.  Now we kind of have to deal with it.

17        THE COURT:  All right.  Because it involves a

18   potential conflict, I will seal this portion of the hearing

19   for now.  Then I will see what ethics counsel's assessment is,

20   and then I will decide whether to unseal the matter based on

21   his or her findings.  All right?  But I will seal this portion

22   for now.  All right?

23        MR. DRISCOLL:  I agree, Your Honor.

24        THE COURT:  So I will issue a minute order as soon as

25   Mr. Kramer has provided me with a lawyer, and why don't we --

1    and, again, Mr. Driscoll, I'm uncomfortable doing a lot without

2    your client's presence.  So why don't we schedule --

3        And I don't plan on making my minute order under seal.

4    I don't think there's any reason for it.  I'm not going to say

5    why I'm doing what I'm doing.  So why don't we just leave it

6    open for now, and then once ethics counsel has completed their

7    assessment, you all can contact chambers and let us know how you

8    wish to proceed.  But if you could do that by motion, I would

9    appreciate it.  All right?

10            MR. KENERSON:  This is Erik Kenerson.  And, yes,

11   that's fine with the government.

12            THE COURT:  Okay.  Mr. Driscoll?

13            MR. DRISCOLL:  And this is Bob Driscoll.  It's fine

14   with the defense.

15            THE COURT:  All right.  Thank you both.

16        I will issue an order as soon as I've spoken with

17   Mr. Kramer.  Thank you very much.

18            MR. KENERSON:  Thank you, Your Honor.

19            MR. DRISCOLL:  Thank you, Your Honor.

20        (Proceedings adjourned at 11:34 a.m.)

21

22

23

24

25

\* \* \* \* \* \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.


*Bryan A. Wayne*
BRYAN A. WAYNE