UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Case: 18-218 (TSC) |
| | : | |
| MARIIA BUTINA, also known as MARIA BUTINA, | : | |
| | : | |
| Defendant. | : | |

**Declaration of Robert Anderson, Jr.**

I, Robert Anderson, Jr., declare as follows:

1. From August 2012 to March 2014, I was the Assistant Director of the Federal Bureau of Investigation (FBI)'s Counterintelligence Division. I also have served as the Executive Assistant Director of the FBI's Criminal, Cyber, and Response and Services Branch; the Deputy Assistant Director of the Counterintelligence Division; and the Special Agent in Charge of the Intelligence Division of the FBI's Washington Field Office. In total, I served for 20 years as a Special Agent with the FBI from 1995 through 2015. I retired from the FBI at the end of 2015 and am now the Chief Executive Officer of Cyber Defense Labs in Dallas, Texas. I have testified as an expert witness in two civil litigation depositions. My testimony in those matters concerned cyber security and intrusions by nation-state actors.

2. This declaration is submitted on behalf of the government in support of its Memorandum in Aid of Sentencing filed in this case. The information provided in this declaration is based on my years of experience investigating and prosecuting counterintelligence cases, as well as my review of open source materials, such as media reports and interviews; public filings in this

1

case; discussions with the case agents; and evidence collected throughout the investigation that has been produced in discovery.

3. Based on my review of those materials, it is my expert opinion that Mariia Butina's activities in the United States from approximately 2015 to 2017 were part of a deliberate intelligence operation by the Russian Federation. I assess that the main purpose of this operation was to collect in the United States, and then provide to the Russian government, information that the Russian government deemed to be of intelligence value. Based on my review of the information Butina in fact provided the Russian Official, which may have been shared with others within the Russian government, I assess that this information was of substantial intelligence value to the Russian government and that Russian intelligence services will be able to use this information for years to come in their efforts to spot and assess Americans who may be susceptible to recruitment as foreign intelligence assets.

4. In addition, Butina's stated goal of establishing a backchannel of communication, if it had been achieved, would have benefited the Russian government by enabling Russia to bypass formal channels of diplomacy, win concessions, and exert influence within the United States. Such benefits to the Russian government would have carried with them commensurate harm to the United States, including harm to the integrity of the United States' political processes and internal government dealings, as well as to U.S. foreign policy interests and national security.

5. The United States is Russia's primary target for malign and intrusive intelligence operations. Russia's intelligence capabilities are focused on the United States more than they are focused on any other nation, by a considerable margin. In targeting the United States, Russia works to obtain not only classified material or trade secrets, but also to collect any information that could, by itself or in conjunction with other efforts, assist the Russian government in

increasing its geopolitical power or undermining and harming that of the United States. Russia's efforts targeting the United States take a myriad of forms — it is, in essence, a numbers game. Not every intelligence campaign needs to be successful for Russia to have achieved its goals.

6. As part of its larger efforts to target the United States, Russia has engaged and continues to engage in spot-and-assess operations. A spot-and-assess operation is an intelligence operation that seeks to identify individuals who could potentially be recruited as an intelligence asset — or "source" — at a later date. Spotting and assessing involves the collection of information about individuals who may be susceptible to recruitment as a foreign intelligence source. When collecting such information, an effective agent will not simply focus on mere biographical details of the target's life or career. Rather, the agent will collect information about the target's potential value as an intelligence asset, including whether the target has significant political influence or has access to high-ranking officials or to sensitive information. An effective agent will also collect information about the target's personal life and character, such as the target's family and social ties, likes and dislikes, habits, ideological leanings, character flaws, vices, and any other information that might make the target amenable to recruitment. The agent then compiles this information into targeting packages that are shared with the agent's handlers for further analysis.

7. Targets of spot-and-assess campaigns are not limited to high-level officials or people with direct access to classified or sensitive information. Rather, targets can also include individuals who are connected to influential persons in the government or in private companies, or individuals who are expected to obtain access to classified or sensitive information at a later time.

8. An agent conducting a spot-and-assess operation typically does not directly recruit a source or ask the source to provide sensitive or classified information. Rather, a spot-and-assess

agent focuses primarily on collecting information about their targets, so that information can be used later by trained intelligence officers as part of carefully orchestrated recruitment efforts. The recruitment of a foreign intelligence source can take years or even decades. Spotting and assessing is simply a first step in a much longer process.

9. Agents conducting spot-and-assess operations are often not trained intelligence officers. Spotting and assessing activity can present a high risk of exposure. A government intelligence service would not want to risk exposing a trained intelligence officer by having such a person engage in this type of conduct. The use of untrained personnel also provides the intelligence service with plausible deniability should the spotter and assessor ever be discovered and exposed.

10. A spot-and-assess operation does not require secret encryption, dead drops, or any other trappings of a Hollywood spy story. In fact, the majority of operations conducted by foreign governments do not involve traditional espionage "trade craft" in the sense that phrase is commonly understood. Yet, spot-and-assess operations are an essential component of intelligence work.

11. In my expert opinion, Butina's activities in the United States from 2015 to 2017 fit the classic pattern of a spot-and-assess operation. For example, the reports she sent back to the Russian Official have all the hallmarks of targeting packages used in spot-and-assess operations. That Butina presented herself as someone with high-level connections in the Russian government but never asked potential targets to provide any confidential information or do anything obviously illegal is entirely consistent with a spot-and-assess operation.

12. I assess that the information Butina provided to the Russian government through the Russian Official was of tremendous intelligence value. Butina collected information about

numerous American citizens who she believed had access to and influence with senior levels of the United States government. She focused specifically on Americans with political influence and Americans who had access, or were expected to acquire access, to the incoming presidential administration. Her ability to gain meaningful access to these powerful individuals would be incredibly valuable to the Russian government. Butina compiled information about these individuals in reports that were sent back to a high-ranking Russian government official. Consistent with a spot-and-assess operation, her reports did not focus on mere biographical details. Rather, she identified the political importance of those individuals upon whom she was reporting. Such information is the essence of a spot-and-assess report.

13. Butina provided Russia with information that has tremendous intelligence value. Certainly, it is the type of information I would have found extremely valuable had I received such information about an adversary as Assistant Director of the FBI's Counterintelligence Division. I have little doubt that at least some of the information Butina provided to Russia has been presented to the Russian equivalent to the FBI's Assistant Director for Counterintelligence — or even to more senior government officials.

14. In my expert opinion, Butina provided the Russian Federation with information that skilled intelligence officers can exploit for years and that may cause significant damage to the United States.

_____
Robert Anderson, Jr.