AO 243 (Rev. 12/04)                                                                                                    Page 2

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY *¶ for writ of Error Coram Nobis & Audita Querella*

| United States District Court | District __OF COLUMBIA__ | |
|---|---|---|
| Name (under which you were convicted): __MARIA BUTINA__ | | Docket or Case No.: __1:18-CR-218 (TSC)__ |
| Place of Confinement: __On unsupervised release quantities w/ "in custody" see United States v. De Gregory, 220 F.Supp 249 (3d Onli), aff'd 341 F.2d 277 (3d cir. 1965)__ | | Prisoner No.: |
| UNITED STATES OF AMERICA  V. | Movant (include name under which convicted) __MARIA BUTINA__ | |

### MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging: _____
   __U.S. District Court District of Columbia__

   (b) Criminal docket or case number (if you know): __1:18-CR-218 (TSC)__

2. (a) Date of the judgment of conviction (if you know): _____
   (b) Date of sentencing: __4/26/19__

3. Length of sentence: __18 months 3 years unsupervised release__

4. Nature of crime (all counts): __Conspiracy to act as an agent of a foreign official 18 USC §§ 371, 951__

5. (a) What was your plea? (Check one)
   (1) Not guilty ☐   (2) Guilty ☑   (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or what did you plead guilty to and what did you plead not guilty to? _____

6. If you went to trial, what kind of trial did you have? (Check one)   Jury ☐   Judge only ☐

SEP - 8 2020

United States District Court
for the __ _____ District of __ CoLumBIA ____

United States of America,

v.   Maria Butina

Case No. 1:18-cR-218 (TSC)

Defendant.

[EVIDENTIARY HEARING REQUESTED]

MOTION TO VACATE, SET ASIDE CORRECT 28 USC 2255 1 FOR WRIT OF ERROR CORAM NOBIS 4 Audita Querella; **MOTION TO DISMISS INDICTMENT FOR INSUFFICIENT EVIDENCE AND LACK OF JURISDICTION FED.R.CRIM.PROC. 12(b); AND DEFENSE SENTENCING MEMORANDUM**

Defendant ("Defendant") moves the court to dismiss the Indictment for insufficient evidence because the interstate commerce element is not present and lack of subject matter jurisdiction under Federal Rule of Criminal Procedure 12(b) and files his Defense Sentencing Memorandum and represents as follows; And moves to vacate the conviction and sentence under 28 USC 2255 and/or the All Writs Act.

1. Under Federal Rules of Criminal Procedure 12(b) a defendant may raise an issue before trial if it involves a defense which is capable of determination without a trial on the merits. In considering a motion made under Rule 12(b), district courts "may ordinarily make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate factfinder." United States v. Craft, 105 F.3d 1123, 1126 (6th Cir. 1997). See also United States v. Jones, 542 F.2d 661, 664-65 (6th Cir. 1976); United States v. Short, 671 F.2d 178, 181-83 (6th Cir. 1981). The court can raise sua sponte subject matter jurisdiction issues. See Nesbit v. Gears Unlimited, Inc. 347 F.3d 72, 77 (3d Cir. 2003). Defendant filed motions to dismiss and renewed motions to dismiss which all arguments therein are hereby incorporated and realleged as if fully set forth again.

**Defendant is factually innocent of the charged offenses because he had no knowledge.**

A defendant must be tried lawfully and the Sixth Circuit has held that a lawyer who fails to adequately investigate information that might demonstrate his client's factual innocence or that might raise a question of guilt renders deficient performance. *Richey v. Bradshaw, 498 F.3d 344, 362 (6th Cir. 2007)*. In fact, it is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. *Rompilla v. Beard, 545 U.S. 374, 387, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005)*. The parties are respectfully reminded that the facts of this case clearly show that Defendant is being unlawfully confined within the Circuit and counsel should inform the government to withdraw the charges and the court should order his immediate release.

Defendant moves to dismiss the Indictment and authors this Defense Memorandum and moves the court to grant the requested relief within. ~~Government's burden has not met because USSC's for many speakers of parties cannot fabricate evidence to charge an actual~~ Freeman v. USA v. Washington, 549 F.3d 905 (3d cir. 2008)

**Grounds for Relief**

**Challenges to the subject matter jurisdiction of the court**

**Conspiracy / Aiding & Abetting / Solicitation / Criminal Allegations**

**Elements of the Offense**

1

Justice Scalia, quoting United States v. Hirsh, wrote "the essence of conspiracy is 'the combination of minds in an unlawful purpose.' " 1 In order to convict a defendant for conspiracy, therefore, the government must prove the defendant agreed with at least one other person to engage in a criminal venture. 2 Under federal law, the conspiracy is complete once the parties agree to commit the predicate crime and "commit a single overt act in furtherance of the conspiracy." 3

The law is not forgiving to those who join conspiracies. A defendant who joins a conspiracy is responsible for all crimes that she or her co-conspirators commit in furtherance of the conspiracy, even if she didn't specifically agree to the commission of the furthering crimes. 4 A defendant remains a member of the conspiratorial group until he withdraws. The burden is on the defendant to prove that she took unequivocal affirmative acts inconsistent with the goals of the conspiracy. 5 [1] The Agreement, Combination
[a] Neither Formal Nor Informal Agreement Need Be Proven

Unquestionably, the most important aspect of the crime of conspiracy is the agreement. 6 Once the agreement requirement has been satisfied, as a practical matter, the offense has been proven. This is true at least at common law. Where an overt act requirement has been established by statute, or by judicial action, the offense is not proven until such an overt act takes place.

**Without proof of the agreement, there can be no offense**; it is the agreement—and nothing more—which satisfies the requirement of an "actus reus" in connection with a criminal charge. To prove that a conspiratorial agreement combination was unlawfully formed, the prosecution need show neither a formal nor an informal compact in which explicit orders or directions were given. Rather, it has consistently been held that circumstantial evidence may be offered to demonstrate a common course of conduct based upon a clear but loose understanding:

**1. A Conspiracy to perform an illegal Act is void ad initio because it is a void agreement, contract or promise.**

A convict or former convict cannot contract because that civil right has been taken from them. Thus, a convict can't enter into a conspiracy because any agreement made is void and is not in fact an agreement at all at the time of inception.

**Void Agreements and Void Contracts**

A void contract or void agreement is a contract that is of no legal efect, so that there is really no contract in existence at all. A contract may be void because it is technically defective, contrary to public policy or illegal. Cf. illegal contract; unenforceable contract.

"Strictly speaking, a 'void contract' is a contradiction in terms; for the words describe a state of things in which despite the intention of the parties, no contract has been made. Yet the expression, however faulty, is a compendious way of putting a case in which there has been the outward semblance without the reality of a contract." *William R. Anson, Principles of the Law of Contract 18* (Arthur L. Corbin ed., 3d. Am. ed. 1919). Blacks Law 9th ed.

When federal and state statutes suspend civil rights of convicts, his or her contract or agreement would be void and would not exist at the time of inception. Today there are nearly 50,000 collateral consequences as a result of a conviction including the prohibition against entering into contracts and agreements. See abacollateralconsequences.org; *United States v. Nesbeth,    F. Supp. 3d  , 2016 U.S. Dist. LEXIS 68731, 2016 WL 3022073 (May 24, 2016)*

2

Agreements

To be valid an agreement must be enforceable by law, if it is not there is no valid agreement or contract.

A void contract or void agreement has no legal effect whatsoever between the parties to a contract. An example is a contract to commit a crime. While such a contract may involve the parties in legal difficulties, it doesn't create rights or duties that may be enforced between the parties. Such contracts are in actuality void agreements or void promises, since the term contract implies a certain amount of validity. In other words, they aren't true contracts, valid agreements, or valid promises.

Civil Rights

Civil rights are the individual rights of personal liberty guaranteed by the Bill of Rights and by the 13th, 14th, 15th and 19th Amendments, as well as by legislation such as the Voting Rights Act. Civil rights include the right to contract, the right to vote, the right of due process, and the right to equal protection under the law.

"At common law a person convicted of a felony became an outlaw. He lost all of his civil rights and all of his property became forfeited. Under modern jurisprudence the civil rights of a person convicted of a crime, be it a felony or misdemeanor, are in noway affected or dismissed except insofar as express statutory provisions so prescribe." Alexander Holtzoff, "Civil Rights of Criminals, "in *Encyclopedia of Criminology 55* (Vernon C. Branham & Samuel B. Kutash eds., 1949).

"The term agreement is frequently used as synonymous with the word contract and is really an expression of greater breadth of meaning. Every contract is an agreement." *2 Stephen's Commentaries on the Laws of England 5 (L. Crispin Warmington ed., 21st ed. 1950).*

"An agreement, as the courts have said, 'is nothing more than a manifestation of mutual assent' by two or more parties legally competent persons to one another." *Samuel Williston A Treatise on the Law of Contracts 2, at 6* (Walter H.E. Jaeger ed., 3d. 1957).

**Conspiracy, Solicitation, Aiding and Abetting and Solicitation Count(s) are void because Defendant, a convicted felon, could not enter into a conspiracy or agreement with any other persons and because as explained under contract law the agreement and contract was void at the time it was made. As a result the court lacks jurisdiction over these Counts in the Indictment.** Counsel was Ineffective in failing to object. Prejudice is the outcome would have been different, petitioner would have been released.

2. Pursuant to any Firearm Count The Government failed to plead the interstate commerce element in the Indictment and that the firearm was a "pistol *with a smooth bore*" as required by 26 U.S.C. 5845(a) and (e) as such the guns plead in the Indictment did not qualify as "firearms" under the technical definition in 18 U.S.C. 922(g)(1). § 5845 because there is no way by reading the Indictment to know if the grand jury found that the *pistols* were ones with a *smooth bore* as required by § 5845 the element of "in and affecting interstate commerce" was not alleged.

26 US.C. 5845 states "(a) Firearm. The term 'firearm' means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; *(5) any other weapon, as defined in subsection (e);* (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device. The term 'firearm' shall not include an antique firearm

3

or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon." *Id.*

"(e) Any other weapon. The term 'any other weapon' means any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell, weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading, and shall include any such weapon which may be readily restored to fire. Such term shall not include a pistol or a revolver having a rifled bore, or rifled bores, or weapons designed, made, or intended to be fired from the shoulder and not capable of firing fixed ammunition." *Id.*

3.  As a result 18 U.S.C. 922(g)(1) was not violated because the guns that were allegedly shipped or transported in interstate or foreign commerce were not prohibited firearms as plead because there was no allegations that they had a smooth bore. See 18 U.S.C. § 925 Exceptions: Relief from disabilities (citing 26 U.S.C. 5845 defining firearms for violations of 18 U.S.C. 922(g)(1)). As a result the Interstate Commerce element is missing from the Indictment, an essential element of a 922(g)(1) offense. Accordingly, Count One must be dismissed.

4. In addition to the above 18 U.S.C. 921(3) offers another definition of firearm and states "(3) The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive;"

5. A *weapon* is a flexible term for any one of various objects used, or intended to be used, as an instrument for fighting. Often defined by various state statutes. (2) *Anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have.* Model Penal Code § 5.06(2).

6. **There are no facts to show in this case that any firearm was readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which they may have** because the firearm was not found on defendant. As a result the evidence in this case to prove a violation of 922(g)(1) of Title 18 in Count One is insufficient.

In addition a federal court looks to state law to determine if the prior offense fits the definition of "crime punishable by more than a year" suffient to come under the ambit of a 922(g)(1) offense. See 18 U.S.C. 921(20)("The term "crime punishable by imprisonment for a term exceeding one year" **does not include**—

(A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or

(B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.")

Counsel was Ineffective in failing to raise each of the below issues and petitioner suffered prejudice ~~because the government pled no facts in the Indictment to show that defendant's prior offenses were not excluded under 18 U.S.C. 921(20) the court lacks subject matter jurisdiction over the 922(g)(1) offenses.~~ Also, the Indictment is duplicitous because it failed to elect a single prior conviction in the Counts which constituted two charges in each count in violation of the right to have a jury return a unanimous vote in the Sixth Amendment and other Counts are duplictious because

4

they charge multiple crimes in a single count.

"An indictment is duplicitous if it 'joins in a single count two or more distinct and separate offenses.'" *United States v. Campbell, 279 F.3d 392, 398 (6th Cir. 2002)(quoting United States v. Shumpert Hood, 210 F.3d 660, 662 (6th Cir.2000)).* As the Sixth Circuit has noted,

The vice of duplicity is that a "jury may find a defendant guilty on the count without having reached a unanimous verdict on the commission of any particular offense." *Shumpert Hood at 662.* By collapsing separate offenses into a single count, duplicitous indictments "prevent the jury from convicting on one offense and acquitting on another." *Id.* Therefore, duplicitous indictments implicate the protections of the Sixth Amendment guarantee of jury unanimity. *Id.Campbell, 279 F.3d at 398.*

**7. The Arrest Warrant and Criminal Complaint was not sealed by the Federal or State Magistrate who purportedly issued it in violation of 28 U.S.C. 638(c)** (stating that "(c) the Director shall furnish to each United States magistrate [magistrate judge] appointed under this chapter [28 USCS §§ 631 et seq.] an official impression seal in a form prescribed by the conference. *<u>Each such officer shall affix his seal to every jurat or certificate of his official acts</u>* without fee.") All in violation of the Fifth Amendment Due Process Clause as such the Court lacks subject matter jurisdiction. Compare with State Rules of Criminal Procedure and State Code Statutes (same).

8. The Arrest Warrant was not returned to the Federal or State Magistrate in violation of Federal Rule of Criminal Procedure 4(c)(4)(A) ("Return. (A) **<u>After executing a warrant, the officer *must* return it to the judge before whom the defendant is brought in accordance with Rule 5.</u>** The officer may do so by reliable electronic means. At the request of an attorney for the government, an unexecuted warrant must be brought back to and canceled by a magistrate judge or, if none is reasonably available, by a state or local judicial officer.") in violation of the Fifth Amendmen. In violation of the State Rules of Criminal Procedure and State Constitution. The Court lacks subject matter jurisdiction.

**9. The Federal or State Magistrate Judge had no jurisdiction to enter a plea for defendant in a felony case and violated Rule 58(b)(3)(A)** ("Arraignment. Plea Before a Magistrate Judge. A magistrate judge may take the defendant's plea in a *petty offense* case. In every other *misdemeanor* case, a magistrate judge may take the plea only if the defendant consents either in writing or on the record to be tried before a magistrate judge and specifically waives trial before a district judge. The defendant may plead not guilty, guilty, or (with the consent of the magistrate judge) nolo contendere.") also in violation of the Fifth Amendment Due Process Clause. The Court lacks subject matter jurisdiction to move forward.

Notably the government will probably cite to out of circuit cases on the idea that defendant has no right to "hybrid" representation, however, in *Government of the Virgin Islands v. Dowling 633 F.2d 660, 667 (3rd Cir. 1980)* the Third Circuit Court of Appeals considered Appellant's pro se brief even though he was represented by counsel. In addition the Sixth Circuit has occasionally exercised our discretion to address supplemental pro se pleadings in addition to those filed by counsel. See, e.g., *Miller v. United States, 561 F. App'x 485, 489 (6th Cir. 2014)* (exercising discretion to consider defendant's pro se arguments despite the fact that he was represented by counsel on appeal where issue presented appeared to have merit). The court should take the same approach here.

**None of the governments contentions in this case have merit** for instance;

The government will likely state that "it is also clear that a Magistrate Judge may accept a not guilty plea during arraignment in a felony case. See Fed. R.Crim. P. 5 & 11". This is clearly incorrect. in Rule 5 the

5

Rule cites to magistrate judge in every place except under the Rules concerning a Felony case. See Fed.R.Crim.Proc 5(d) which states "Procedure in a *Felony* Case.
(1) Advice. If the defendant is charged with a felony, the *judge* must inform the defendant of the following:
(A) the complaint against the defendant, and any affidavit filed with it;
(B) the defendant's right to retain counsel or to request that counsel be appointed if the defendant cannot obtain counsel;
(C) the circumstances, if any, under which the defendant may secure pretrial release;
(D) any right to a preliminary hearing;
(E) the defendant's right not to make a statement, and that any statement made may be used against the defendant; and
(F) that a defendant who is not a United States citizen may request that an attorney for the government or a federal law enforcement official notify a consular officer from the defendant's country of nationality that the defendant has been arrested-but that even without the defendant's request, a treaty or other international agreement may require consular notification.
(2) Consulting with Counsel. The judge must allow the defendant reasonable opportunity to consult with counsel.
(3) Detention or Release. The judge must detain or release the defendant as provided by statute or these rules.
(4) Plea. A defendant may be asked to plead only under Rule 10.

*Compare* Fed.R.Crim.Proc. 5(d) with 5(c) "(c) Place of Initial Appearance; Transfer to Another District.
(1) Arrest in the District Where the Offense Was Allegedly Committed. If the defendant is arrested in the district where the offense was allegedly committed:
(A) the initial appearance must be in that district; and
(B) if a *magistrate judge* is not reasonably available, the initial appearance may be before a state or local judicial officer.
(2) Arrest in a District Other Than Where the Offense Was Allegedly Committed. If the defendant was arrested in a district other than where the offense was allegedly committed, the initial appearance must be:
(A) in the district of arrest; or
(B) in an adjacent district if:
(i) the appearance can occur more promptly there; or
(ii) the offense was allegedly committed there and the initial appearance will occur on the day of arrest.
(3) Procedures in a District Other Than Where the Offense Was Allegedly Committed. If the initial appearance occurs in a district other than where the offense was allegedly committed, the following procedures apply:
(A) the magistrate judge must inform the defendant about the provisions of Rule 20;
(B) if the defendant was arrested without a warrant, the district court where the offense was allegedly committed must first issue a warrant before the *magistrate judge* transfers the defendant to that district;
(C) the magistrate judge must conduct a preliminary hearing if required by Rule 5.1;
(D) the magistrate judge must transfer the defendant to the district where the offense was allegedly committed if:
(i) the government produces the warrant, a certified copy of the warrant, or a reliable electronic form of either; and
(ii) the judge finds that the defendant is the same person named in the indictment, information, or warrant; and
(E) when a defendant is transferred and discharged, the clerk must promptly transmit the papers and any bail to the clerk in the district where the offense was allegedly committed.
(4) Procedure for Persons Extradited to the United States. If the defendant is surrendered to the United

6

States in accordance with a request for the defendant's extradition, the initial appearance must be in the district (or one of the districts) where the offense is charged."

As we can see the government is blatently mistaken. A magistrate judge cannot accept a plea in felony case but only can do so when the charge is a petty offense or misdemeanor.

What is now known as the United Sates Magistrate Judge was originally a national park commissioner. The name of the office has changed, but the nature of the office hasn't. This is an administrative, not a judicial office. It's equivalent to what used to be the police court magistrate. Today the only offenses trialble by a United States Magistrate Judge are traffic violations and other misdemeanor and petty offenses committed on military reservations, in national parks and forests, etc., under regulations promulgated by the Department of Defense and the Department of the Interior. Don't capture wild burrows and mustangs in national parks without a permit, as that is a misdemeanor offense triable by a United States Magistrate Judge.

United States Magistrate Judges in the several States have "venue" jurisdiction solely over offenses committed on Federal enclaves where United States Government has exclusive or concurrent jurisdiction ceded by one of the several States. And as Rule 5(c) specifies they cannot even ask for, much less make a plea for a defendant charged with a felony crime. This prohibition is effective under Rule 5, 9, 10 & 11. When and if a United States Magistrate Judge asks for or makes a plea for a defendant in a felony case, he has usurped power vested in Article III judges of the United States. When this quasi-judicial officer exceeds authority Congress vested in him by law, the United States loses subject matter jurisdiction and there are grounds to pursue lawful remedies, both civil and criminal. Government officials, regardless of capacity, enjoy the cloak of immunity only to the outer reaches of their lawful authority. The notion of blanket judicial or any other absolute immunity is nothing more than a convenient fiction. Rule 11 fairs the government no better because defendant is making his specific objections on the record only the District Judge may accept an entry of a plea in this felony case. Federal Magistrates Act, 28 USCS §§ 631-639, pursuant to its "additional duties" clause, 26 USCS § 636(b)(3), authorizes magistrate judges to conduct Fed. R. Crim. P. 11 proceedings; defendant must clearly waive right to have such proceedings conducted by U.S. Const. art. III judge. *United States v Osborne* 345 F.3d 281 (4th Cir. 2003).

**FISA**

Defendant moves pursuant to 50 USC 1806(f) and Fed.R.Crim.Proc 16 to disclose any Foreign Intelligence Surveillance Act ("FISA") electronic surveillance because as an aggrieved party under FISA Defendant is also neither a foreign power or agent of a foreign power and the electronic FISA surveillance violated 50 USC 1801, et seq and the Due Process Clause and Fourth Amendment. It allowed the government to do an end run around the 4th Amendment in violation of Due Process. The government's current policy because the mere existence of FISA surveillnance or not against a targeted individual like defendant is classified. See 32 C.F.R. § 222.5(i)(ii)(4) stating "The DoD Component is not required to confirm or deny the existence or nonexistence of requested information whenever the fact of its existence or nonexistence is itself classified pursuant to Executive Order 13526 Classified National Security Information" this is because FISA is a state secret of the United States and may be the biggest intelligence secret the government has in it's arsenal. Because, the AUSA in his admission and subsequent silence conceeded by the silence defendant's positions regarding the possible existence of a FISA Warrant the court should order the government to disclose the FISA electronic surveillance if it exists in-camera to the court and provide defendant with a redacted version of the FISA materials. If FISA exists Defendant is entitled to it and should have it in a redacted unclassified form See USA v. Daoud (7th Cir. ) and to counsel in a unredacted classified form should counsel receive the necessary secutiry clearances to receive the FISA information. Defendant seeks all orders of authorization and approval and any other FISA materials. If FISA exists it was illegally obtained and the court should dismiss the case pursuant to the Classified Information Procedures

Act. The FISA allowed the government to build a case against defendant but instead of using it because the government knew it was illegal they suppressed this evidence. Moreover any FISA could constitute Brady material and support Defendant's defense of this case and/or allow defendant to argue how the FISA could apply to a downward departure at sentencing.

**ACTUAL NOTICE TO THE COURT:** **Now that Defendant has brought these issues of jurisdiction and the courts lack of it to its attention this court has an obligation to determine before moving forward if it in fact has jurisdiction even if the court declines to hear the motion or require a government response and even if defense counsel or the government objects to the motion. This court has a sua sponte obligation. This obligation is inherent in the Due Process Clause and applicable to this court via 28 USC 453 (stating that the Judge must do right to the poor or rich and uphold the US Constitution).** A Federal Court of Appeals has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006).* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." In the absence of jurisdiction, this Court's only function is to announce the lack of jurisdiction and dismiss or remand the case. *Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (citing Ex parte McCardle, 74 U.S. 506, 514, 19 L. Ed. 264 (1869)).* Because this requirement "springs from the nature and limits of the judicial power of the United States, [it] is inflexible and without exception." *Id. at 94-95, quoting Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382, 4 S. Ct. 510, 28 L. Ed. 462 (1884)).*

**WHEREFORE,** any government reply to Defendant's motions should be overruled and defendant's motions should be granted.

10. Federal Rule of Criminal Procedure ("Rule") 6(c) requires the grand jury foreman to record the vote, and then file a letter of certificate of concurrence with the clerk of court.

11. Rule 6(b)(1) Challenge to Grand Jury "shall be made before the administration of the oath to the jurors and shall be tried by the court." **Defendant was never given the opportunity to challenge the Grand Jury array or the Grand Jury selection because defendant was not made aware of the Grand Jury investigation until after the Indictment was returned in violation of Federal Rule Criminal Proc. 6 and Due Process and State Rules and the State and US Constitution..**

Since defendant didn't know a grand jury was investigating him, he never had the opportunity to challenge the grand jury array, or individual grand jurors. Consequently, he has been deprived of substantive due process, which is expressly prohibited by 28 U.S.C. 2702(b). Since constitutionally secured due process of law was abridged the court lacked subject matter jurisdiction.

Defendant and his counsel did not have the opportunity to challenge the grand jury array (composition selection process) and individual grand jurors prior to the grand jury being seated, they're all disqualified as the qualified process is among the defendant's constitutionally secured due process rights. by consulting Chapter 121 of Title 28 generally, and 28 U.S.C. 1867 specifically, we find that there is no distinction in the voir dire examination and other jury qualification process for grand juries or petit trial juries: "(a) In criminal cases, before the voir dire examination begins or within seven days after the defendant discovered or could have discovered by the exercise of diligence, the grounds therefore, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of

substantial failure to comply with the provisions of this title in selecting the grand or petit jury." Since defendant didn't know the grand jury was investigating him, he didn't have the opportunity to challenge the grand jury array, or individual grand jurors. As a result he have been deprived of substantive due process, which is expressly prohibited by 28 U.S.C. 2072(b).

We have an adversarial judicial system. All parties to any given action, the government included, stand on equal ground. The system isn't set up for convenience of the government. Government always has the burden of proof, whether in civil or criminal matters. The defendant has the right to challenge the qualifications and competency of from "peers" who ultimately have responsibility for determining indictable offenses and/or final liability. If and when government personnel deprive the Citizen of any of these rights, constitutionally secured due process of law is abridged. In that event, courts lose subject matter jurisdiction.

13. **The grand jury did not return the Indictment in open court to a magistrate judge and no transcript of the proceeding is available in violation of Rule 6(f).** The court lacks jurisdiction.

14. **The grand jury foreman did not file a letter or Certificate of Concurrence of the Indictment or Superseding Indictment with the clerk of court in violation of Rule 6(f) and Due Process.** The court lacks subject matter jurisdiction.

15. **Defendant never received a Preliminary examination in violation of Rule 5(c) and Due Process.** In addition Defendant never had the opportunity to subpoena his witnesses or enter his evidence at the preliminary examination because one was never held in violation of Fifth Amendment Due Process. As a result the court lacks subject matter jurisdiction.

16. Defendant moves the court to dismiss the Superseding Indictment based on the ground that the U.S. Attorney's Office issued grand jury subpoenas and received the evidence and other information from various sources direct without the authorization or approval of the grand jury. A grand jury is an independent body. Here, the U.S. Attorney's Office through the AUSA issued grand jury subpoena's for the evidence and materials without prior authorization or approval from the Grand Jury. As a result the court lacks subject matter jurisdiction to move forward in this case because Defendant's Due Process under the Fifth Amendment was violated when the AUSA abused the Grand Jury Process in violation of the Fifth and Sixth Amendments.

### Misuse of subpoenas

17. Court will not presume that grand jury will permit records covered by subpoena to be diverted to use of third persons; such improper use, if attempted, would invoke protective power of District Court which could act either contemporaneously or afterward in connection with such attempt. Homan Mfg. Co. v Russo (1956, CA7 Ill) 233 F.2d 547, 56-1 USTC ¶ 9527, 49 AFTR 1265

18. Rule 17 does not authorize use of grand jury subpoenas as ploy for facilitation of office interrogation; neither FBI, Strike Force nor United States attorney has been granted subpoena power for office interrogation outside presence of grand jury, but court, required under 18 USCS § 3501 to admit all "voluntary" confessions, does not have authority to order suppression of voluntary statement which resulted from improper use of Rule 17 subpoena. United States v Di Gilio (1976, CA3 NJ) 538 F.2d 972, cert den (1977) 429 US 1038, 50 L Ed 2d 749, 97 S Ct 733

9

19. Government made improper use of grand jury subpoenas where it summoned defendant's former girlfriends one full day before grand jury proceedings, provided them with counsel and subjected them to substantial amount of questioning; rule does not authorize government to use grand jury subpoenas to compel prospective witnesses to attend private interviews with government agents. United States v Wadlington (2000, CA8 Iowa) 233 F.3d 1067, cert den (2001) 534 US 1023, 122 S Ct 552, 151 L Ed 2d 428 and post-conviction relief den (2005, CA8 Iowa) 428 F.3d 779, reh den, reh, en banc, den (2006, CA8) 2006 US App LEXIS 1351 and cert den (2006) 549 US 1077, 127 S Ct 723, 166 L Ed 2d 561, reh den (2007) 549 US 1176, 127 S Ct 1143, 166 L Ed 2d 908

20. It is improper use of process for assistant United States attorney to issue grand jury subpoena for purpose of conducting his own inquisition of witness in office of United States attorney rather than appearance before grand jury. Durbin v United States (1954, App DC) 94 US App DC 415, 221 F.2d 520

21. Where government obtained defendants' books and records through use of subpoena issued in name of grand jury not in session but expected to be sitting on return date, without consulting or notifying grand jury, and books and records were accepted by assistant United States attorney, used by government in further investigation, and 18 months later finally delivered to one of grand juries which had been sitting at time books and records were originally obtained, use of power did not result in invalid indictment which should be dismissed or in illegally obtained evidence which should be suppressed. United States v Kleen Laundry & Cleaners, Inc. (1974, ED NY) 381 F Supp 519 115.

**Abuse of process**

22. While grand jury is summoned, impaneled, and sworn by court, it is essentially independent of court control; while judge has supervisory duty to see that its process is not abused or used for purposes of oppression or injustice, there should be no curtailment of inquisitorial power except in clearest cases of abuse. United States v United States Dist. Court (1956, CA4) 238 F.2d 713, cert den (1957) 352 US 981, 1 L Ed 2d 365, 77 S Ct 382

23.      Since the facts of this case clearly show that the grand jury process was abused by the prosecutor the court should dismiss the Indictment with prejudice because defendant's substantive due process rights were violated.

**WHEREFORE**, the Motion to dismiss the Superseding Indictment should be granted.

24. **Counts are duplitious because they charges multiple offenses in a single count.** ~~Count 36 charges that Defendant "had willfully aided in the preparation of false tax returns, by~~, All in violation of the Sixth Amendment Right ro have a jury return a unanimous vote.

"An indictment is duplicitous if it 'joins in a single count two or more distinct and separate offenses.'" *United States v. Campbell, 279 F.3d 392, 398 (6th Cir. 2002)(quoting United States v. Shumpert Hood, 210 F.3d 660, 662 (6th Cir.2000))*. As the Sixth Circuit has noted,

The vice of duplicity is that a "jury may find a defendant guilty on the count without having reached a unanimous verdict on the commission of any particular offense." *Shumpert Hood at 662*. By collapsing separate offenses into a single count, duplicitous indictments "prevent the jury from convicting on one offense and acquitting on another." *Id*. Therefore, duplicitous indictments implicate the protections of the Sixth Amendment guarantee of jury unanimity. *Id.Campbell, 279 F.3d at 398*.

Defendant moves the court to order the government to disclose the Jencks Act material and to hold a Jencks

and Fatico hearing and represents as follows;

25. Defendant was charged in this case.

26. Trial defendant's are entitled to Jencks material. Even a defendant who pleads guilty is still entitled to receive Jencks Act material even where there is no trial. See United States v. Rosa 891 F.2d 1074 (3rd Cir. 1989). "The first, and virtually the only case, to address the question of whether Jencks Act material must be furnished at a sentencing hearing was decided in the federal district court in the Eastern District of New York some few months after this court's decision in Murphy was filed. In United States v. Fatico, 458 F. Supp. 388 (E.D.N.Y. 1978), affd, 603 F.2d 1053 (2d Cir. 1979), cert denied, 444 U.S. 1073, 62 L. Ed. 2d 755, 100 S. Ct. 1018 (1980), Judge Weinstein, among other things, held that;

> The need for Jencks discovery is just as great at a sentencing hearing to determine a critical fact not established at trial that directly affects the defendant's liberty, as it would be at trial. Fatico 458 F.Supp at 400. Holding that such material must be furnished for sentencing hearings where goernment witnesses testified, Judge Weinstein's reasoning with respect to the defendant in Fatico is just as applicable to the situation which confronted Plisco at his sentencing:"

27. Here defendant wishes to contest the facts and evidence and question the government witness under oath therefore the Jencks material is critical in that determination. Defendant would able to impeach the government witnesses with their prior statements and if successful would receive a lower sentence. Due Process contained in the Fifth Amendment requires this.

28. As a result of the above the court should order the government to provide the Jencks Act material and Hold a Jencks and Fatico hearing and order the government to produce and confidential informants, agents and other witnesses at the hearing to take testimony.

WHEREFORE, the foregoing Motion should be granted along with all other requested and warranted relief.

**Sentencing Issues**

**Collateral Consequences**

29. If Defendant were to be convicted and sentenced in this case by plea or trial there are nearly 50,000 federal and state collateral consequences he faces as a result of the conviction. Defendant would be precluded from voting, sitting on a jury, holding public office and owning a firearm. Defendant moves the court to downward depart 15 offense levels as a result and impose a sentence of time served. see, e.g., *United States v. Nesbeth, F. Supp. 3d , 2016 U.S. Dist. LEXIS 68731, 2016 WL 3022073 (May 24, 2016); United States v. Parris, 573 F. Supp. 2d 744 (2008),* the harshness of Defendant's sentence must commensurate with the nature of his crimes. In *Nesbeth* the court ordered the probation department to calculate going forward every collateral consequence every defendant in that district will face as a result of the conviction and place these facts in the Pre-Sentence Investigation Report. Here, the court should order the probation department to do the same using abacollateralconsequences.org. A defendant may receive a downward departure for the collateral consequences as a result of the conviction. See *United States v. Nesbeth, 188 F Supp 3d 179 (EDNY May 24, 2016)* ("Remarkably, there are nationwide nearly 50,000 federal and state statutes and regulations that impose penalties, disabilities, or disadvantages on convicted

11

felons. Of those, federal law imposes nearly 1,200 collateral consequences for convictions generally, and nearly 300 for controlled-substances offenses.33 District courts have no discretion to decide whether many of these collateral consequences should apply to particular offenders. The result is a status-based regulatory scheme; by the very fact of an individual's conviction, he or she is subject to a vast array of restrictions.

The range of subject matter that collateral consequences cover can be particularly disruptive to an ex-convict's efforts at rehabilitation and reintegration into society. As examples, under federal law alone, a felony conviction may render an individual ineligible for public housing, section 8 vouchers, Social Security Act benefits, supplemental nutritional benefits, student loans, the Hope Scholarship tax credit, and Legal Services Corporation representation in public-housing eviction proceedings. Moreover, in addition to the general reluctance of private employers to hire ex-convicts, felony convictions disqualify individuals from holding various positions, *and petitioner was not informed before she pled guilty that she would be deported. The court should vacate the deportation order.*

Oftentimes, the inability to obtain housing and procure employment results in further disastrous consequences, such as losing child custody or going homeless. In this way, the statutory and regulatory scheme contributes heavily to many ex-convicts becoming recidivists and restarting the criminal cycle.

Denials of social benefits and the difficulty of obtaining employment are only two aspects of post-conviction life. States impose other restrictions that exclude convicted felons from fully rejoining society. Except for Maine and Vermont, which allow convicts to vote absentee while serving an incarceratory sentence, every state disenfranchises convicted felons to some extent. Ten states, depending on the crime committed, impose permanent bans on a felons' right to vote.

Felons are also often excluded from the important civic duty of sitting on a jury. As of 2003, thirty-one states imposed a lifetime ban on ex-convicts serving jury duty, while the vast majority of the remaining nineteen imposed at least some restrictions. While many citizens may not lament the loss of the privilege, these exclusions disproportionately prohibit blacks from serving on juries.")

In addition Defendant should receive a 3 point reduction of the offense level pursuant to U.S.S.G. 2X1.1 *Conspiracy* See U.S.S.G. 2K2.1(3)(c).

30. Also Defendant moves for the court to downward depart 1$ offense levels and to a criminal history category I because his prior criminal history over represents his propensity to reoffend See *United States v. Shoupe, 35 F.3d 835, 839 (3d Cir. 1994)* (Holding "where a defendant's offense level has been augmented by the career offender provision, a sentencing court may depart downward in both the criminal history and offense level categories under § 4A1.3.") and under Nesbeth for the Collateral Consequences.

**Prejudice**

31. Defendant suffered actual prejudice because he is held in pretrial oppressive incarceration, his substantive Sixth Amendment Rights and statutory rights have been violated as stated above and his Fifth Amendment Right to Due Process has been violated because the Speedy Trial Act was violated.

**WHEREFORE,** the Motion to Dismiss should be granted. The Indictment should be dismissed and the court should sentence defendant to time served with 6 months to 1 year supervised release or 1 year of probation and grant a downward departure. The Court should order an immediate hearing on this motion. *New* Counsel should be ordered to prosecute this motion for Defendant. *Petitioners conviction and sentence should be vacated, as well as her deportation order.*

Respectfully submitted,

_____ [sign name]

AO 243 (Rev. 12/04)                                                                                                    Page 12

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

The government impeded the making of this motion by holding petitioner in solitary confinement and petitioner did not realize she would be deported until well after she was sentenced. Also, petitioner filed this motion by mailing it under the prison mailbox rule on April 15, 2020 but it was returned unfiled. The court should consider the motion filed as of April 15, 2020. See Houston v. Lack, 487 US 266 (1988); 28 USC 2255(f)(2), (4).

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —
   (1) the date on which the judgment of conviction became final;
   (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
   (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
   (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.